SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Haydee Gallardo v. Walmart** **(A-65-24) (089466)**

**Argued November 5, 2025 -- Decided July 30, 2026**

**JUSTICE PATTERSON, writing for the Court.**

In this appeal, the Court considers whether a snow removal measure undertaken by a contractor hired by defendant Walmart -- the application of salt to the surface of the parking lot during a storm without pretreating the lot before precipitation began -- created "unusual circumstances" within the meaning of the first exception to the ongoing storm rule. That exception, which was recognized in Pareja v. Princeton International Properties, applies if a commercial landowner's actions "increase the risk to pedestrians and invitees on their property" by "creating 'unusual circumstances' where the defendant's conduct exacerbates and increases the risk of injury to the plaintiff." 246 N.J. 546, 559 (2021).

At around 1:30 p.m. on January 3, 2015, plaintiff Haydee Gallardo fell in the parking lot of Walmart's Union Township store during an ongoing storm of mixed precipitation that had begun at around 11:30 a.m. Land Pros of New Jersey, LLC was the snow removal contractor for that store. At the time of plaintiff's accident, there was minimal accumulation on the parking lot -- "about a trace" to one tenth of an inch. According to Land Pros' co-owner, he arrived at the Walmart store at 12:35 p.m. and "spread salt" on the "lots and walks" until 1:15 p.m. He testified that when he visited the Walmart property, the snow had not accumulated sufficiently to warrant plowing the parking lot. It is undisputed that prior to the storm, Land Pros did not pretreat the parking lot with salt or another de-icing compound.

In October 2016, Gallardo filed this action alleging that Walmart acted in a negligent, careless, and/or reckless manner. Her designated expert in the field of snow and ice management opined that that when Gallardo slipped and fell, "there was a dangerously slippery condition that should have been pretreated with an application of ice melt." The trial court granted summary judgment in favor of Land Pros but denied Walmart's motion for summary judgment.

On June 10, 2021, the Court decided Pareja. Walmart then filed its second motion for summary judgment. The trial court denied summary judgment, finding that the first exception identified in Pareja governs this case. The court did not

1

mention the "unusual circumstances" requirement of <u>Pareja</u>; instead, under the court's interpretation of <u>Pareja</u>, the exception would apply if a commercial landlord's actions "increase the risk to pedestrians and invitees on their property."

Following a five-day trial, the jury found Walmart negligent and determined that its negligence was the proximate cause of Gallardo's fall. After molding the verdict to account for past medical expenses and awarding prejudgment interest, the trial court entered judgment in Gallardo's favor in the amount of $1,328,658.59.

Walmart appealed, and the Appellate Division vacated the trial court's judgment and remanded for a new trial. It held, however, that Walmart was not entitled to summary judgment, judgment at trial, or judgment notwithstanding the verdict because it found, addressing the first exception of <u>Pareja</u>, that there was a genuine issue of material fact as to "whether Walmart's conduct . . . made the parking lot more dangerous on the day of the accident."

The Court denied Gallardo's petition for certification, 260 N.J. 553 (2025), and granted Walmart's cross-petition, 260 N.J. 562 (2025).

**HELD:** A snow removal contractor's spreading of salt on the minimal accumulation of snow at issue does not give rise to "unusual circumstances" warranting the imposition of a duty on a commercial landowner during an ongoing storm.

1. Writing that the dissent is substantially premised on two arguments that were not asserted by any party or amicus in this case and were not ruled upon by any trial judge or appellate court, the Court explains that it will address only the issue presented by this appeal: whether this matter falls within the first exception set forth in <u>Pareja</u>, 246 N.J. at 559. (pp. 21-24)

2. To establish her claim for negligence, Gallardo had the burden to prove (1) that defendant owed plaintiff a duty of care; (2) a breach of that duty by defendant; (3) an injury to plaintiff proximately caused by defendant's breach; and (4) actual damages. This appeal centers on the first element, the defendant's duty of care. In <u>Pareja</u>, the Court held "that commercial landowners do not have the absolute duty, and the impossible burden, to keep sidewalks on their property free from snow or ice during an ongoing storm." <u>Id.</u> at 557. <u>Pareja</u> expressly adopted the ongoing storm rule, which it found consistent with New Jersey case law on sidewalk liability and snow removal. "Absent unusual circumstances," the <u>Pareja</u> Court explained, "a commercial landowner's duty to remove snow and ice hazards arises not during the storm, but rather within a reasonable time after the storm." <u>Id.</u> at 558. <u>Pareja</u> then identified settings in which "unusual circumstances" warrant an exception to the ongoing storm rule, setting forth two exceptions. <u>Id.</u> at 558-59. The first exception -- the exception Gallardo invokes in this appeal -- applies if commercial landowners'

2

actions "increase the risk to pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increase[s] the risk' of injury to the plaintiff." Id. at 559. The second exception to the ongoing storm rule, irrelevant to this appeal, applies "where there was a pre-existing risk on the premises before the storm." Ibid. (pp. 25-29)

3. The first exception to Pareja does not apply simply because a jury could determine that a commercial landowner's remediation of snow and ice increases the risk to pedestrians and invitees on the property -- a construction that reads out the "unusual circumstances" requirement. Noting that Gallardo cited Model Civil Jury Charge 5.20B as contrary support, the Court explains that model charges are not binding authority and asks the Committee on Model Civil Jury Charges to review that 5.20B and align it with the language of Pareja. (p. 30)

4. The Rhode Island Supreme Court's decision in Terry v. Central Auto Radiators, Inc., 732 A.2d 713 (R.I. 1999), cited in Pareja, illustrates the meaning of Pareja's first exception. The "unusual circumstances" recognized in Terry arose when the plaintiff, who had left her car at an auto repair company during an ongoing storm, returned to find it "had been removed by one of the defendant's employees to a rear lot some hundred feet distant." Id. at 717. The defendant's employee told the plaintiff to "go and get her vehicle" and advised her "to be careful of the accumulating snow and ice on the very portion of property that she was directed to use in walking the extended distance to her vehicle." Ibid. The action by the commercial landowner that increased the risk of harm to the plaintiff in Terry was not a failed attempt to remove snow and ice as it accumulated during an ongoing storm, but rather the defendant's direction to the plaintiff to traverse uncertain conditions to retrieve her vehicle. Id. at 717-18. Terry illustrates the Court's intent to limit Pareja's first exception to unusual settings. Absent the "unusual circumstances" requirement, a court could impose a duty on a commercial landowner if that landowner or its contractor applies a de-icer such as salt during an ongoing storm or shovels the snow, but its efforts fail and a pedestrian or business invitee is injured. Such a rule would incentivize landowners and their contractors to forgo any remediation effort until a storm is over, thereby increasing the risk of injury to pedestrians and invitees. The Court declines to impose such a rule and instead reaffirms that the first Pareja exception includes an "unusual circumstances" requirement, in accordance with the opinion's express terms. (pp. 31-35)

5. Construing the record of this case in the light most favorable to Gallardo, the Court finds no genuine issue of material fact as to whether "unusual circumstances" warranted an exception to the ongoing storm rule. Walmart was entitled to judgment dismissing plaintiff's claims based on the ongoing storm rule. (pp. 35-36)

**REVERSED. REMANDED for the entry of summary judgment.**

3

**JUSTICE FASCIALE, dissenting**, expresses the view that the majority misinterprets Pareja's first exception by adding an undefined "unusualness" requirement.  Justice Fasciale writes that the two circumstances noted in Pareja -- increasing the risk and a pre-existing risk -- are themselves the "unusual circumstances" that reimpose a legal duty of reasonable care on the landowner during a storm; the risk-increasing conduct need not also be "unusual."  Justice Fasciale also states that it is error to apply Pareja's framework to this case for two reasons:  first, the Pareja Court adopted the ongoing storm rule and the "unusual circumstances" exception at the heart of this appeal six years after plaintiff's 2015 accident, so the well-established principles of general negligence that governed prior to Pareja should govern here; and, second, the accident at issue here occurred in Walmart's private parking lot, whereas the express focus of Pareja and the decades of precedent upon which it relied focused on public walkways.  Justice Fasciale adds that summary judgment should not be granted given the unresolved disputed issues of fact in this case.  Justice Fasciale would uphold the jury's verdict.

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS and WAINER APTER join in JUSTICE PATTERSON's opinion.  JUSTICE FASCIALE filed a dissent in which JUSTICES NORIEGA and HOFFMAN join.**

4

SUPREME COURT OF NEW JERSEY
A-65 September Term 2024
089466

Haydee Gallardo,

Plaintiff-Respondent,

v.

Walmart, Debra Lewis,
Wal-Mart Stores, Inc.,
Union 22 Plaza, LLC,
Wal-Mart Real Estate
Business Trust, and
Wal-Mart Stores East, L.P.,

Defendants-Appellants,

and

Land Pros of New Jersey, LLC,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| November 5, 2025 | July 30, 2026 |

Matthew D. Vodzak argued the cause for appellants
(Fowler Hirtzel McNulty & Spaulding, attorneys;
Matthew D. Vodzak, of counsel and on the briefs).

Paul K. Caliendo argued the cause for respondent (Gill &
Chamas, attorneys; Paul K. Caliendo, on the brief).

1

Evan J. Lide argued the cause for amicus curiae New Jersey Association for Justice (Stark & Stark, attorneys; Evan J. Lide, of counsel, and John C. Lowenberg, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In Pareja v. Princeton International Properties, this Court invoked longstanding precedent to hold that unless a case presents "unusual circumstances," a commercial landowner's duty to remove snow and ice from its property does not arise during an ongoing storm, but instead arises only within a reasonable time after the storm concludes. 246 N.J. 546, 558 (2021).

The Court identified two "unusual circumstances" warranting exceptions to the ongoing storm rule. Id. at 559. The first exception that the Court recognized in Pareja applies if a commercial landowner's actions "increase the risk to pedestrians and invitees on their property" by "creating 'unusual circumstances' where the defendant's conduct exacerbates and increases the risk of injury to the plaintiff." Ibid. (internal quotation and alterations omitted).

In this matter, plaintiff Haydee Gallardo filed a negligence action against defendants Wal-Mart Stores East, LP i/p/a Walmart, Wal-Mart Stores, Inc., and Wal-Mart Real Estate Trust (collectively, Walmart). She alleges that she suffered serious injuries due to a fall in the parking lot of Walmart's Union

2

Township store on January 3, 2015.  According to Gallardo's expert, at the time of her accident, there was only a "trace" to one tenth of an inch of snow and sleet on the surface of Walmart's parking lot.

Gallardo contends that a snow removal measure undertaken by a contractor hired by Walmart -- the application of salt to the surface of the parking lot during the storm without pretreating the lot before precipitation began -- created "unusual circumstances" warranting application of the first exception to the ongoing storm rule.

We disagree.  A snow removal contractor's spreading of salt on the minimal accumulation of snow at issue does not give rise to "unusual circumstances" warranting the imposition of a duty on a commercial landowner during an ongoing storm.  Were we to recognize such a duty in the unremarkable factual setting of this appeal, the exception would defeat the purpose of the ongoing storm rule.  We decline to depart from our precedent regarding that rule.

Accordingly, we hold that the trial court erred when it denied Walmart's motion for summary judgment, its motions for judgment at trial, and its motion for judgment notwithstanding the verdict.  We reverse the Appellate Division's judgment remanding the matter to the trial court for a new trial and remand

3

this matter to the trial court for the entry of summary judgment in Walmart's favor.

## I.

## A.

We summarize the facts based on the complaint, the summary judgment record, and the trial record.

On January 2, 2014, Wal-Mart Stores, Inc. and a snow removal contractor, Land Pros of New Jersey LLC, entered into a Master Services Agreement for the performance of work on certain Walmart properties. Although the Master Services Agreement envisioned that specific work assignments to the contractor would be defined in scope of work agreements, the record does not contain a scope of work agreement defining Land Pros' snow and ice removal responsibilities.[1] It is undisputed, however, that on the date of Gallardo's accident, Land Pros was retained to conduct snow and ice removal in the parking lot of Walmart's Union Township Store. Indeed, Gallardo alleges that on the date of her accident, Walmart and Land Pros "owned, controlled,

---

[1] Land Pros and Walmart certified in discovery that they could not locate a scope of work agreement defining Land Pros' snow and ice removal responsibilities. Walmart produced an exemplar agreement as representative of its scope of work agreements with its snow and ice removal contractors. That exemplar agreement provided that the contractor "shall remove snow and ice continuously before, during and after an Event until snow and ice is removed and bare pavement has been achieved."

4

operated, inspected and/or maintained" the premises of Walmart's store in Union Township.

The record establishes that when Gallardo fell in the Walmart parking lot at approximately 1:30 p.m. on January 3, 2015, there was an ongoing storm. According to Gallardo's expert in the field of forensic meteorology, Thomas Else, it began to snow in Union at approximately 11:30 a.m. on January 3, 2015. Else testified that at 1:00 p.m., "there was still some snow falling but it was sleet and rain mixed in," and that between 11:30 a.m. and 5:00 p.m. there was continuous precipitation.

The record also makes clear that at the time of plaintiff's accident, there was minimal accumulation on the parking lot. Else testified that "[a]t 1:30, around the time of the incident," the accumulation amounted to "about a trace" to one tenth of an inch, which "is the smallest amount that you can measure with a ruler that we do for snow and sleet accumulation."

According to Land Pros' co-owner, John Fierro, who testified based on a Land Pros service record, he arrived at the Walmart store at 12:35 p.m. on January 3, 2015, and "spread salt" on the "lots and walks" until 1:15 p.m. He testified that when he visited the Walmart property, the snow had not accumulated sufficiently to warrant plowing the parking lot. It is undisputed

5

that prior to the storm, Fierro did not pretreat the parking lot with salt or another de-icing compound.

At 1:30 p.m., approximately fifteen minutes after Fierro finished salting the parking lot and sidewalks, Gallardo, driven by her son, arrived at Walmart to purchase Tylenol for her grandson. She testified that when she and her son walked from her car toward the Walmart store, the parking lot surface "had white areas and dark areas," but "was very slushy." She said that she was "looking straight ahead, being very careful because it was very slushy." Gallardo testified, "I don't know what, I just slipped and fell. I lost my balance, I couldn't catch it. So, my -- my right leg went under my left leg, I landed on my butt on my right side." Asked by her counsel at trial why she fell, Gallardo testified that she fell because of "[t]he slushy ice, snow." Gallardo stated that immediately after her fall, she could not get up on her own, so her son assisted her, and they went into the store and made their purchase.

Gallardo alleges that due to her fall, she hurt her lower back and sustained other injuries.

B.

1.

On October 31, 2016, Gallardo filed this action.  Gallardo alleged that Walmart acted in a negligent, careless, and/or reckless manner.  Wal-Mart Stores East, L.P. filed a third-party complaint against Land Pros, alleging breach of contract and seeking contribution and common-law indemnification. In an amended complaint, Gallardo asserted a direct action against Land Pros and named additional defendants.

In addition to Else, her meteorology expert, and a medical expert to opine on her injuries, Gallardo designated J. Nelson Wiest as an expert in the field of snow and ice management.  Wiest adopted Else's opinions, including his opinion that when Gallardo fell, the snow accumulation was estimated to be between a trace and one tenth of an inch.  Among other opinions regarding the alleged negligence of Walmart and Land Pros, Wiest opined that when Gallardo slipped and fell, "there was a dangerously slippery condition that should have been pretreated with an application of ice melt," and that "[t]his slippery condition was due to existing slippery conditions in the area."

Land Pros moved for summary judgment.  Citing <u>Bodine v. Goerke Co.</u>, 102 N.J.L. 642, 643-44 (E. & A. 1926), and other authority, the trial court held that "the reasonable time in which a commercial property owner must act to

7

clear snow and ice from public walkways does not begin until after the storm ends." The court accordingly granted Land Pros' motion for summary judgment.

Walmart then filed its first motion for summary judgment. The trial court denied the motion.[2]

On June 10, 2021, this Court decided Pareja. In the wake of that decision, Walmart filed its second motion for summary judgment. Walmart argued that it owed no duty to clear snow and ice before the storm ended and noted that there was no dispute that the storm was ongoing when Gallardo fell. Walmart also asserted that under the law of the case doctrine, because Land Pros was found not to have been negligent and was granted summary judgment, Gallardo's claim -- premised on Land Pros' allegedly negligent removal of snow and ice from the store parking lot -- should be dismissed on summary judgment.

Gallardo argued that Pareja did not compel the grant of summary judgment in this case. She maintained that Walmart voluntarily assumed a duty to conduct snow removal during an ongoing storm by virtue of its

_____

[2] The record does not reveal the trial court's reasoning in denying Walmart's first motion for summary judgment. The trial court's denial of that motion is not challenged in this appeal.

contract with Land Pros and its exemplar scope of work's mandate that the contractor remove snow and ice continuously before, during, and after a storm. Gallardo also noted that although this Court in Pareja granted Walmart "absolute immunity" whether an ongoing storm is major or minor, it also created an exception that applies if the defendant "does something that under the circumstances makes the condition worse" or "creates a condition." She asserted that because Land Pros applied salt to accumulated snow without pretreating the parking lot, this case fits within Pareja's first exception.

The trial court agreed with Gallardo's argument that the first exception identified in Pareja governs this case. The court did not mention the "unusual circumstances" requirement of Pareja; instead, under the court's interpretation of Pareja, the exception would apply if a commercial landlord's actions "increase the risk to pedestrians and invitees on their property." The court found a "genuine issue of fact as to whether [Walmart's] contractor's failure to pretreat the parking lot and then spreading an ice-melting agent on the ground surface after some snow fell created a risk to pedestrians and business invitees." The trial court denied summary judgment.[3]

---

[3] The trial court acknowledged Walmart's argument that its contract with Land Pros could not afford Gallardo a cause of action given her failure to allege that she was a beneficiary of that contract, calling that argument "logical." The court stated, however, that Walmart's motion "relies solely on the ongoing storm rule."

9

The case was tried before a jury for five days. Gallardo, her husband, and her daughter testified about the circumstances of the accident and Gallardo's injuries. Gallardo presented the deposition testimony of current and former Walmart representatives. She relied on her expert witnesses, Else and Wiest, and a medical expert addressing damages.

In his trial testimony, Wiest stated that when Fierro "put salt and apparently not enough salt to melt it all because we have the pictures of what the result was, when he put the salt down," he threw it "on top of the snow and that snow melts and runs down and when it hits that cold untreated surface it becomes black ice." Wiest asserted that Fierro "essentially exacerbated the condition by throwing water on it, which is what he did," and that Fierro "increased the risk." Wiest also reiterated his opinion that Land Pros' failure to "pretreat before accumulation started" contributed to Gallardo's fall.

After Gallardo rested her case, the trial court denied Walmart's motion for judgment at trial pursuant to Rule 4:40-1, finding Gallardo's evidence sufficient to warrant denial of that motion.

Walmart presented the testimony of Fierro, a Walmart assistant manager, and expert witnesses addressing Gallardo's claim for damages. At the close of the evidence, Walmart again moved for judgment pursuant to Rule 4:40-1, and the trial court denied the motion.

At the charge conference, Walmart submitted to the trial court a jury instruction based on the first exception prescribed in Pareja, 246 N.J. at 559. The charge that Walmart proposed would have directed the jury to determine whether Land Pros' application of an ice melting agent during a snowstorm gave rise to an unusual circumstance that increased the risk of injury to pedestrians such as Gallardo.

Because the dissent suggests that the trial court declined to charge the jury on Pareja because Pareja was decided before Gallardo's accident, see post at ___ (slip op. at 17-18, 21, 35-39), we present in detail the court's discussion of the charge with counsel for the parties.

In response to Walmart's request for a Pareja charge, the trial court commented that "[t]here are many doctrines laid down by the Supreme Court that are applied," but "none of them have their own jury charge." Gallardo opposed the proposed charge without explaining the reason for that position. Walmart stated that the court had denied summary judgment on the Pareja question because it was a question of fact and added that the jury should be told about Pareja because "that is the law right now."

The trial court commented that "the question of fact in this case is not -- it was prior to the Supreme Court ruling," and that under case law "going back to the 40s, if you do something to make the conditions, you're liable. And

11

there is no special charges to that." The court stated that prior to <u>Pareja</u>, there had been no jury charge; rather, "It's simply if you find them negligent. In other words, if the jury finds that Walmart undertook the obligation to clear it and didn't do it properly, making conditions worse, that's what it is." Gallardo responded that when <u>Bodine</u> "was the controlling law," there was "no charge given to the jury that if you believed there was an ongoing storm, they had no duty." The court added that "the only difference" <u>Pareja</u> created "is that there's no absolute duty to do anything if there's an ongoing storm. There -- but the -- law was always, before that and continued to be, that if you choose to do something, you better do it right."

The trial court suggested, as an alternative to a jury charge based on <u>Pareja</u>, a post-verdict jury interrogatory intended to elicit the jury's views as to whether Walmart or an entity on its behalf had salted the parking lot prior to Gallardo's arrival, which would be followed by a motion for judgment notwithstanding the verdict if the jury concluded that Walmart did not apply salt. After considering the comments of counsel, the court abandoned that suggestion.

The trial court then stated that its objection to Walmart's proposed <u>Pareja</u> charge was that "if I use your charge, I've got to tell them to -- ask the jury first, was there a continuing storm, yes or no?" The court added that it

would then have to ask the jury, "[i]f there was a continuing storm, did Walmart undertake actions despite the continuing storm, yes or no?" The trial court observed,

> the Supreme Court didn't change the law, by the way. The exception existed prior to the law. The exception was basically, if you undertake -- they made it an exception but it was the law before. And if you undertake to do something -- you know, you go out and shovel your sidewalk and you do a bad job and you weren't obligated to shovel your sidewalk, you created a liability for yourself. You know, it's -- it's the old maxim. You -- have no obligation to do it, but if you do it, you better make sure you do it right because you've now created -- you've undertaken a duty you didn't have to do.

The trial court stated its understanding that under Pareja, commercial landowners, lessees, and contractors "have no absolute duty to go out and do something during a continuing storm," but "there's already all this law in place that says if you go out and do it, you'd better make sure you do it right because now you've undertaken the duty." The court further commented that "the way I read Pareja" is "that's an issue for summary judgment. If there's a continuing storm, you get out on" summary judgment.

The trial court's jury charge on the question of liability, premised on general principles of negligence, did not mention the ongoing storm rule.

13

The following day, after the trial court instructed the jury, Walmart again objected to the court's decision not to charge the jury regarding Pareja. Gallardo responded,

> with respect to what occurred prior to Pareja, when, -- when we would rely upon Bodine, which was the, essentially, the absolute defense if an ongoing storm, was alleged, there wouldn't be a charge with respect to ongoing storm or issues like that. It would be charged as regular negligence, as the court did in this case.

Gallardo also argued that in Pareja, "the issue was one of duty, and it is an issue as a matter of law," and that "that's an issue of fact which has already been addressed in this case." Gallardo observed that Walmart's motion for summary judgment on Pareja "was already denied by this trial court."

Stating that Pareja was "a recent Supreme Court decision" that was not yet the subject of a model jury charge, the trial court commented that Pareja "deals not with what happens at a trial before a jury," but requires only that if "there's no question of fact that there's an ongoing storm and the defendant undertook no action," then as a matter of law, the defendant would not be liable. The trial court added:

> This case is not Pareja. This case is dealing with the fact that Walmart, the defendant in this case, the allegations of fact for the jury to decide are that Walmart undertook an action. And whether or not they did that action properly causing, to worsening of the situation -- situation and causing, resulting damages is

14

a question  of fact for the jury to decide under regular negligence as in a pre-Pareja case.

The trial court commented that it understood Walmart's objection to its decision not to give the Pareja charge, "but I'm not going to charge the jury as to it because it -- it would bring confusion into the jury in the Court's view."

The jury found Walmart negligent and determined that its negligence was the proximate cause of Gallardo's fall.  It awarded Gallardo $500,000 for pain and suffering, $213,000 for past medical expenses, and $414,000 for future medical expenses, for a total verdict of $1,127,000.

Walmart moved for judgment notwithstanding the verdict pursuant to Rule 4:40-2(b); for a new trial pursuant to Rule 4:49-1; and for a remittitur.  The trial court denied Walmart's motions, again viewing Pareja to govern only cases in which a commercial landowner takes no action to remove snow or ice, not cases like this one, in which a commercial entity attempted -- by having a contractor apply a de-icer -- to remove snow and ice from the parking lot.

After molding the verdict to account for past medical expenses and awarding prejudgment interest, the trial court entered judgment in Gallardo's favor in the amount of $1,328,658.59.

2.

Walmart appealed the trial court's decisions denying its motions for summary judgment, judgment at trial, and judgment notwithstanding the

15

verdict. Walmart argued that Pareja precluded the imposition of a duty to remove snow and ice during the ongoing storm on the day of Gallardo's accident and that, in the absence of unusual circumstances, neither exception to the ongoing storm rule recognized in Pareja applied to this case. Walmart further contended that the trial court erred when it declined to charge the jury regarding the ongoing storm rule.[4]

Gallardo countered that the trial court properly ruled that the ongoing storm rule set forth in Pareja did not preclude the imposition of a duty because Walmart directed its contractor to conduct snow removal during the storm. She argued that Walmart voluntarily imposed a duty on itself by instructing contractors in its exemplar scope of work to remove snow before, during, and after storms.

The Appellate Division agreed with Walmart that the trial court committed error when it declined to instruct the jury regarding the ongoing storm rule. The appellate court stated, "[w]e part ways with the judge's view that charging the jury on the [ongoing storm] doctrine would have confused

---

[4] Walmart also argued before the Appellate Division that the trial court should have granted summary judgment because it had granted summary judgment to Land Pros; that the court should have excluded the testimony of Gallardo's snow removal expert on the ground that he rendered a net opinion; and that the trial court improperly declined Walmart's request for a remittitur, thus allowing Gallardo to be awarded a windfall.

16

them." The Appellate Division held that the trial court should have asked the jury to determine whether this case fit into either of the exceptions to the duty recognized in Pareja -- exceptions the appellate court viewed to be "clear" and "not beyond the ken of the average juror." The Appellate Division therefore vacated the trial court's judgment and remanded for a new trial, directing the trial court to instruct the jury using Model Jury Charges (Civil), 5.20B, "Liability for Defects in Public Streets and Sidewalks: Liability of Owner of Commercial Property for Defects, Snow and Ice Accumulation and Other Dangerous Conditions in Abutting Sidewalks" (rev. Nov. 2022).

The Appellate Division, however, held that Walmart was not entitled to summary judgment, judgment at trial, or judgment notwithstanding the verdict. Addressing the first exception of Pareja, the court held that there was a genuine issue of material fact as to "whether Walmart's conduct, through its contractor Land Pros, made the parking lot more dangerous on the day of the accident." The appellate court viewed "the question of whether spreading salt on snow during the storm was an unusual circumstance increasing or exacerbating the risk" to be a disputed issue warranting a jury determination. It rejected Walmart's remaining arguments.

17

3.

Gallardo filed a petition for certification, challenging the Appellate Division's decision vacating the trial court's judgment and remanding for a new trial.  We denied Gallardo's petition for certification.  260 N.J. 553 (2025).

Walmart filed a cross-petition, arguing that (1) under Pareja, a commercial landowner's performance of normal snow removal operations during an ongoing storm does not give rise to "unusual circumstances" warranting application of the first exception to the ongoing storm rule; and (2) given the trial court's grant of summary judgment to Land Pros, Walmart cannot be held liable for Land Pros' conduct of snow removal.  We granted Walmart's cross-petition for certification.  260 N.J. 562 (2025).

We granted amicus curiae status to the New Jersey Association for Justice (NJAJ).

II.

Walmart argues that the first exception to the ongoing storm rule in Pareja, 246 N.J. at 558-59, does not apply unless the commercial landowner's actions give rise to "unusual circumstances" increasing the risk of injury, and that salting a parking lot in a snowstorm does not rise to the level of "unusual circumstances."  Walmart asserts that if commercial landowners could be held

18

liable for ordinary snow removal activities during an ongoing storm, they would have a compelling incentive not to shovel, apply salt, or otherwise remediate the conditions until after the storm has ended.

Gallardo urges us to affirm the Appellate Division's holding that genuine issues of material fact regarding the application of the first exception of Pareja preclude summary judgment. Citing Model Civil Jury Charge 5.20B, which does not include the "unusual circumstances" language of Pareja, Gallardo argues that the first exception in Pareja applies in any setting in which a commercial property owner, during an ongoing storm, conducts snow removal procedures that increase the risk of injury.

NJAJ interprets Pareja to hold that the ongoing storm rule does not shield from liability commercial landowners who engage in conduct during the storm that enhances the risk of harm. In NJAJ's view, Pareja precludes the imposition of a duty only when landowners choose to do nothing during a snowstorm or conduct snow remediation using due care.

III.

A.

"[I]n construing the law -- whether the common law or a statute -- our review is de novo," and we need not defer to the interpretive conclusions of the trial court or Appellate Division. Qian v. Toll Bros., Inc., 223 N.J. 124,

19

135 (2015) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)); accord State in Int. of A.B., 219 N.J. 542, 554-55 (2014).

When we review a trial court's grant or denial of a summary judgment motion, we apply the same standard that governs the trial court's determination. In re Est. of Jones, 259 N.J. 584, 594 (2025). In accordance with Rule 4:46-2(c), an appellate court decides "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Padilla v. Young Il An, 257 N.J. 540, 547 (2024) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).

The standard for determining a motion for judgment under Rule 4:40-1 and the standard for determining a motion for judgment notwithstanding the verdict under Rule 4:40-2 are the same: "the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord that party the benefit of all legitimate inferences which can be deduced therefrom," and it must deny the motion "if reasonable minds could differ." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 to R. 4:40-1 and -2 (2026); see also Dolson v. Anastasia, 55 N.J. 2, 5 (1969); Velazquez ex rel. Velazquez v. Jiminez, 336 N.J. Super. 10, 30-31 (App. Div. 2000).

20

B.

The dissent is substantially premised on two arguments that were not asserted by any party or amicus in this case and were not ruled upon by any trial judge or appellate court. In a matter litigated for more than a decade, in which the parties and amicus are represented by seasoned counsel, those two arguments are asserted -- for the first and only time -- in the dissent.

First, the dissent contends that Pareja should not govern this appeal because the accident in this matter occurred prior to the Court's decision in that case. Post at ___ (slip op. at 6-9, 32-35).

Neither party shares the dissent's view that Pareja does not govern this case because of the timing of that decision. Walmart has consistently maintained that Pareja applies to this case. Gallardo vehemently agrees. In her opposition to Walmart's petition for certification, she urged this Court not to accept Walmart's argument that it is entitled to summary judgment because its contractor, Land Pros, was granted summary judgment. In that argument, Gallardo made abundantly clear her position that Pareja -- not prior law addressing duties during ongoing storms -- provides the standard for this case. Gallardo wrote:

> Land Pros was granted summary judgment on July 1, 2019; nearly nine months prior to the Appellate Division holding in Pareja v. Princeton Int'l Props., 363 N.J. Super. 231 (App. Div. 2020), which was decided

21

on April 9, 2020, and almost two years prior to the Supreme Court's Decision in <u>Pareja v. Princeton Int'l Props.</u>, 246 N.J. 546 (2021). The basis for the Trial Court's grant of summary judgment to Land Pros turned on the then-controlling caselaw espoused by <u>Bodine v. Goerke Co.</u>. 102 N.J.L. 642 (E. & A. 1926). As this Court is undoubtedly aware, its holding in <u>Pareja v. Int'l Props.</u>, 246 N.J. 546 (2021) supersedes the holding of <u>Bodine</u>.

After criticizing Walmart for relying on the grant of summary judgment to Land Pros before <u>Pareja</u> was decided, Gallardo added that "the law of the case as it existed at the time Land Pros was granted summary judgment in July 2019, prior to <u>Pareja</u>, is not the same law that is now applicable on remand from the Appellate Division." Gallardo invoked "the drastic change in the caselaw guiding the responsibility of commercial landowners during a snowstorm event since 2019" and reminded this Court that the Appellate Division "agreed that the holding of <u>Pareja</u> applies to this litigation."

Accordingly, the dissent's argument that <u>Pareja</u> does not provide the governing law because it was decided after Gallardo's accident directly contravenes the positions of both parties, and raises an issue that no court in this case has determined.[5]

---

[5] As noted above, <u>see</u> <u>supra</u> at pp. 11-15, the trial court's decision not to charge the jury regarding <u>Pareja</u> -- and to charge general negligence principles instead -- was based on (1) the court's view that <u>Pareja</u> applies only to cases in which commercial landowners take no action during an ongoing storm, not to cases in which they conduct snow and ice removal; (2) its view that <u>Pareja</u>

Second, the dissent asserts that Pareja's reach is confined to cases involving accidents on sidewalks, not cases arising from accidents in private parking lots such as the parking lot at issue here. Post at ___ (slip op. at 9-10, 32-35, 39-43). That contention is also raised for the first time by the dissent. Neither Gallardo nor Walmart argued such a position before the two trial judges who considered this case, before the Appellate Division, or before this Court. Instead, they agree that Pareja provides the governing law. Their dispute concerns the application of Pareja to this specific case.[6] And consistent with the positions of the parties, none of the courts that heard this case have premised their rulings on any contention that Pareja does not provide

---

presents an issue for summary judgment, not for trial; and (3) its view that charging the jury with respect to Pareja would be confusing. The dissent nonetheless contends that the trial court's decision not to charge the jury regarding Pareja related to the fact that Gallardo's accident occurred prior to the Pareja decision. Post at ___ (slip op. at 17-18, 21, 35-39). The court's decision to reject the charge had nothing to do with the timing of Pareja.

[6] Parties -- not amici curiae -- frame the issues in an appeal. State v. Patel, 264 N.J. 80, 96-97 (2026). For the sake of completeness, however, we note that the sole amicus curiae who appears in this matter, the NJAJ, made no claim that Pareja does not govern here because of the timing of that decision, or that Pareja does not apply because Gallardo's fall occurred in a parking lot, not on a public sidewalk. Instead, the NJAJ cites Pareja as the governing law and addresses the question before the Court: whether Pareja's first exception applies in the factual setting of this appeal.

the governing law either because of its timing or because Gallardo's accident occurred in a parking lot rather than on a public sidewalk.

"[T]he 'rule that points not argued will not be considered' [] distinguishes our adversarial system of justice from an inquisitorial one." Margolin v. Nat'l Ass'n of Immigr. Judges, 608 U.S. ___, ___ (2026) (slip op. at 3) (quoting United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)).  Our appellate courts limit their rulings to the issues raised by the parties for compelling reasons.  That practice furthers essential principles of consistency, fairness, and judicial economy, and we follow it today.

We do not respond to the dissent's contentions that are not part of this case, and address only the issue presented by this appeal:  whether this matter falls within the first exception set forth in Pareja, 246 N.J. at 559.[7]

C.

---

[7]  In addition, the dissent challenges the Appellate Division's decision to vacate the trial court's judgment and remand this matter for a new trial on the ground that the jury charge was improper, and states that it would "uphold the jury verdict" in this case.  Post at ___ (slip op. at 10-11, 35-39).  Because this Court denied Gallardo's petition for certification, in which she asked the Court to reverse the Appellate Division's decision vacating the judgment in her favor, the jury charge issue addressed by the Appellate Division is not part of this appeal.  See 260 N.J. at 553.

24

To establish her claim for negligence, Gallardo had the burden to prove (1) that defendant owed plaintiff a duty of care; (2) a breach of that duty by defendant; (3) an injury to plaintiff proximately caused by defendant's breach; and (4) actual damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015). This appeal centers on the first element, the defendant's duty of care.

As this Court has observed, "[d]etermining the scope of tort liability has traditionally been the responsibility of the courts." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). "Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Ibid. "Whether, in a given context, 'a duty to exercise reasonable care to avoid the risk of harm to another exists is [a question] of fairness and policy that implicates many factors.'" Holm v. Purdy, 252 N.J. 384, 402 (2022) (alteration in original) (quoting Coleman v. Martinez, 247 N.J. 319, 337 (2021)).

In Pareja, we applied those principles to find that the defendant commercial landowner owed no duty of care to the plaintiff, who fell on ice on the defendant's property. 246 N.J. at 554-60. There, an overnight "wintry mix of light rain, freezing rain, and sleet" had fallen; at the time of the plaintiff's accident, "'light rain and pockets of freezing rain were falling,' and the

25

temperature was about thirty-two to thirty-three degrees." Id. at 549. The defendant could not recall whether its landscaping contractor had been summoned to address the icy conditions on its property. Id. at 550. There was no dispute that the accident took place during an ongoing storm. Id. at 549.

The trial court found in Pareja that the defendant had no duty to clear the accumulated precipitation while the storm was still underway. Id. at 551. The Appellate Division reversed, holding that "a commercial landowner has a duty to take reasonable steps to render a public walkway abutting its property -- covered by snow or ice -- reasonably safe, even when precipitation is falling." Pareja v. Princeton Int'l Props., 463 N.J. Super. 231, 251 (App. Div. 2020).

We granted the defendant's petition for certification and reversed the Appellate Division's determination. 246 N.J. at 554-60.

We relied in Pareja on the opinion of the Court of Errors and Appeals nearly a century before in Bodine, 102 N.J.L. at 642-44. There, the plaintiff "fell or slipped at the entrance or lobby of the defendant's" Newark store during a storm that left an accumulation of "slushy" and "sloppy" precipitation. Id. at 642-43. The Court of Errors and Appeals distinguished the case before it from Cooper v. Reinhardt, 91 N.J.L. 402, 403-404 (Sup. Ct. 1918), in which "ice was allowed to remain on the steps of the defendant's hotel for three and one-half hours after the snow had stopped falling." Bodine,

26

102 N.J.L. at 643. The court found, in the ongoing storm setting, no inferences from the facts in the record "that <u>could</u> or <u>ought</u> to justify a jury in finding" that the defendant was negligent. <u>Id.</u> at 644.[8]

In <u>Pareja</u>, we acknowledged case law addressing a commercial landowner's duty to act "in a reasonably prudent manner under the circumstances to remove or reduce the hazard" of ice and snow within a reasonable time after a storm's conclusion. 246 N.J. at 555-56 (quoting <u>Mirza v. Filmore Corp.</u>, 92 N.J. 390, 393-400 (1983), and also discussing <u>Qian</u>, 223 N.J. at 130, 136; <u>Stewart v. 104 Wallace St., Inc.</u>, 87 N.J. 146, 155-57 (1981)). We noted, however, that "those cases discuss the imposition of a duty on commercial landowners to remove snow and ice only after the cessation of the hazardous precipitation," and that "none opine on the imposition of a duty before that point, which is the crux of this appeal." <u>Id.</u> at 556.

Citing "the limiting principles established in our precedent," we held "that commercial landowners do not have the absolute duty, and the impossible burden, to keep sidewalks on their property free from snow or ice during an

---

[8] As we noted in <u>Pareja</u>, 246 N.J. at 555, the setting of <u>Bodine</u> contrasted with that of <u>Saco v. Hall</u>, 1 N.J. 377, 381 (1949), in which the defendant had constructed a water removal system that malfunctioned and caused the hazard that the plaintiff encountered, and with <u>Davis v. Pecorino</u>, 69 N.J. 1, 4 (1975), in which the owner's decision to allow motor vehicles to traverse the sidewalk created the dangerous condition.

ongoing storm." Id. at 557. We explained the premise of the rule: that it is "categorically inexpedient and impractical to remove or reduce hazards from snow and ice while the precipitation is ongoing." Id. at 558. As we stated,

> [o]ur precedent makes clear, and we reiterate today, that absent unusual circumstances, a commercial landowner's duty to remove snow and ice hazards arises not during the storm, but rather within a reasonable time after the storm. Given the unreasonableness of removing the accumulation of snow and ice while a storm is ongoing, adopting the ongoing storm rule today is consistent with our case law on sidewalk liability and snow removal.
>
> [Id. at 558 (citing Qian, 223 N.J. at 135-36; Mirza, 92 N.J. at 395-96; Stewart, 87 N.J. at 157; Bodine, 102 N.J.L. at 644).]

We noted that our holding "aligns us with the majority rule and ten other states that have adopted the ongoing storm rule." Id. at 558 (citing Dixon v. HC Equities Assocs., LP, 241 N.J. 132, 135 (2020) (Albin, J. dissenting)).

We reasoned in Pareja that although "commercial landowners do not have a duty to remove the accumulation of snow and ice" until a storm is over, "unusual circumstances may give rise to a duty before then." Ibid. We therefore identified settings in which "unusual circumstances" warrant an exception to the ongoing storm rule. Id. at 558-59.

We held that the first exception -- the exception Gallardo invokes in this appeal -- applies if commercial landowners' actions "increase the risk to

28

pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increase[s] the risk' of injury to the plaintiff." Id. at 559 (quoting Terry v. Cent. Auto Radiators, Inc., 732 A.2d 713, 717-18 (R.I. 1999)).

We recognized a second exception to the ongoing storm rule, irrelevant to this appeal, which applies "where there was a pre-existing risk on the premises before the storm." Ibid. We noted, as an example of that second exception, that "if a commercial landowner failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded, he may be liable for an injury during a later ongoing storm." Ibid.

We stated in Pareja that our holding "does not preclude a jury from hearing questions of fact such as, but not limited to, when the storm concluded or whether the accumulation of snow or ice was from a previous storm." Ibid.

D.

We determine whether the first exception to the ongoing storm rule recognized in Pareja applies in the setting of this appeal.

29

Contrary to the contentions of the trial court and Gallardo and the view expressed in the dissent, post at ___ (slip op. at 29-32), the first exception to Pareja does not apply any time a jury could determine that a commercial landowner's remediation of snow and ice increases the risk to pedestrians and invitees on the landowner's property. See ibid. That construction of Pareja reads the "unusual circumstances" requirement out of the decision.[9]

That requirement, however, is an integral component of the Court's holding, not mere verbiage that courts and counsel are free to ignore. See Pareja, 246 N.J. at 557-59. The term "unusual circumstances" appears in two parts of the opinion: in the Court's statement that the ongoing storm rule precludes the imposition of a duty "absent unusual circumstances"; and in the Court's description of the two exceptions in which "unusual circumstances" may be found. Ibid. Under Pareja, a court should not impose on commercial

---

[9] We do not concur with Gallardo that the omission of the term "unusual circumstances" from Model Civil Jury Charge 5.20B supports her argument that the first Pareja exception can be established absent such circumstances. The Model Civil Jury Charges are valuable aids created by the Model Civil Jury Charge Committee to assist judges and litigants, "but they 'are not binding authority.'" Graphnet, Inc. v. Retarus, Inc., 250 N.J. 24, 40 (2022) (quoting State v. Bryant, 419 N.J. Super. 15, 28 (App. Div. 2011)). If a model charge is inconsistent with governing case law, it should be amended to conform to that law. See ibid. We ask the Committee on Model Civil Jury Charges to review the model ongoing storm jury charge -- Model Civil Jury Charge 5.20B -- and align it with the language of Pareja.

30

landowners a duty to remove snow and ice during an ongoing storm unless it finds that the defendant's actions gave rise to "unusual circumstances."

The Rhode Island Supreme Court's decision in Terry, cited in Pareja, illustrates the meaning of Pareja's first exception. The "unusual circumstances" recognized in Terry arose "when the plaintiff, who in early winter dusk and during an ongoing storm, had returned to pick up her automobile at a place where she had originally left it [on the premises of the defendant auto repair company], she found that it was no longer there." Terry, 732 A.2d at 717. The automobile "had been removed by one of the defendant's employees to a rear lot some hundred feet distant." Ibid. The defendant's employee told the plaintiff to "go and get her vehicle" and advised her "to be careful of the accumulating snow and ice on the very portion of property that she was directed to use in walking the extended distance to her vehicle." Ibid. The Rhode Island Supreme Court reasoned that although the plaintiff "subjected herself to the risk of falling on the snow and ice" when she chose to retrieve her vehicle during a snowstorm, the defendant "exacerbated and increased the risk of the plaintiff's falling when it required her to walk some one hundred additional feet over snow and ice that had been accumulating on unknown and difficult terrain." Id. at 717-18. Thus, in Terry, the action by the commercial landowner that increased the risk of harm to the

31

plaintiff was not a failed attempt to remove snow and ice as it accumulated during an ongoing storm, but rather the defendant's direction to the plaintiff to traverse uncertain conditions to retrieve her vehicle. Ibid. Terry thus illustrates this Court's intent to limit Pareja's first exception to unusual settings. See Pareja, 246 N.J. at 559.[10]

The dissent asserts that other states that have adopted the ongoing storm rule uniformly hold that if a commercial landowner undertakes snow removal activities during an ongoing storm, a claim that arises from an accident following those activities is not subject to an "unusual circumstances" test, but

___

[10] The dissent characterizes our inclusion of the "unusual circumstances" requirement of Pareja's first exception in our holding as "superimpos[ing] a novel, ill-defined, and unworkable 'unusualness' element to Pareja's exceptions," "a wholesale departure from our well-established precedent," a "brand new 'unusualness' requirement," a "new interpretation of Pareja's first exception," "not a meaningful legal test," not a "predictable or workable legal standard," the imposition of "blanket immunity from liability," the imposition of "an additional requirement" not in Pareja, and "immunizing unreasonable conduct." Post at ___ (slip op. at 1, 2, 6, 22, 26, 29, 30, 34, 36). The dissent also contends that, "in first announcing" the exceptions in Pareja, "the Court made no reference to 'unusual circumstances,'" and it characterizes the Court's use of the term "unusual circumstances" in that decision to be "descriptive." Post at ___ (slip op. at 21, 22).

In Pareja, however, the Court defined its first exception as follows: "First, commercial landowners may be liable if their actions increase the risk to pedestrians and invitees on their property, for example, by creating 'unusual circumstances' where the defendant's conduct 'exacerbate[s] and increase[s] the risk' of injury to the plaintiff." Pareja, 246 N.J. at 559 (citing Terry, 732 A.2d at 717-18) (emphasis added). Our holding comports with the express terms of the Pareja decision.

32

is determined under an ordinary negligence standard. Post at ___ (slip op. at 25-28). The dissent further claims that the jurisdictions that have adopted the ongoing storm rule uniformly exclude from that rule cases in which the commercial landowner has attempted to remediate snow and ice during an ongoing storm. Ibid. It portrays the "unusual circumstances" standard governing Pareja's first exception as a novel concept, originating in this appeal, that deviates from tort principles adopted in other states. Post at ___ (slip op. at 25).

Those assertions are incorrect. A decade after it decided Terry, the Rhode Island Supreme Court confirmed in Berardis v. Louangxay, 969 A.2d 1288, 1291-93 (R.I. 2009), that the "unusual circumstances" test of Terry governs the question whether an exception to the ongoing storm rule applies -- even if, as in Berardis, the defendant has attempted to remove snow and ice during an ongoing storm. The Connecticut Supreme Court has held that "in the absence of unusual circumstances," a property owner "may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps." Kraus v. Newton, 558 A.2d 240, 243 (Conn. 1989). And in Laine v. Speedway, LLC, 177 A.3d 1227, 1229 (Del. 2018), the Delaware Supreme Court held that "[u]nder the continuing storm doctrine, it is reasonable for a business owner to wait until a storm has ended and a

33

reasonable time thereafter to remove natural accumulations of ice and snow in the absence of unusual circumstances." The Delaware Supreme Court also held that a commercial landowner does not "assume[] a duty to make [a] parking lot safe by beginning snow removal operations while the storm [is] still in progress." Id. at 1230.

In short, contrary to the dissent's contention, neither the adoption of the "unusual circumstances" exception in Pareja nor the application of that standard in this appeal makes New Jersey an outlier among the jurisdictions that apply the ongoing storm rule.

Were we to construe the first Pareja exception as the trial court and Gallardo interpreted it and the dissent contends that we should, that exception would eviscerate the ongoing storm rule. Absent the "unusual circumstances" requirement, a court could impose a duty on a commercial landowner if that landowner or its contractor applies a de-icer such as salt during an ongoing storm or shovels the snow, but its efforts fail and a pedestrian or business invitee is injured. Ibid. Indeed, in this case, the trial court explained its understanding that if a commercial landowner takes any action to remove snow and ice during an ongoing storm, it is held to the ordinary standard of due care -- the same standard that applies if an accident occurs a reasonable time after a storm ends. Such a rule would apply with equal force to a family operating a

34

single store or a major corporation such as Walmart. It would incentivize landowners and their contractors to forgo any remediation effort until a storm is over, thereby increasing the risk of injury to pedestrians and invitees.

We decline to impose such a rule. Instead, we reaffirm that the first Pareja exception includes an "unusual circumstances" requirement, in accordance with our opinion's express terms.

We find in this record no genuine issue of material fact as to whether "unusual circumstances" warranted an exception to the ongoing storm rule. When Gallardo fell in Walmart's parking lot at approximately 1:30 p.m. on January 3, 2015, there was an ongoing storm that would not end for several hours. It is clear that any accumulation of precipitation at that time was -- at most -- minimal, estimated to amount to no more than a trace to one tenth of an inch. Walmart's contractor did not pretreat its parking lot before the storm began, but applied a commonly used de-icer -- salt -- to the parking lot surface during the storm, before Gallardo fell. That conduct simply did not not give rise to "unusual circumstances" of any kind, let alone a setting comparable to that of Terry. The first exception prescribed by Pareja cannot, as a matter of law, govern this appeal.

Construing the summary judgment record in the light most favorable to Gallardo, we find no genuine issue of material fact with respect to the first

35

element of Gallardo's negligence claim, the defendant's duty of care.  We therefore conclude that the trial court should have granted Walmart's motion for summary judgment based on the record presented in that motion.  See R. 4:46-2(c).  The trial record only underscored the absence of unusual circumstances in this case -- no fact or expert witness testimony established "unusual circumstances" that would justify the imposition of a duty as an exception to the ongoing storm rule.

Accepting as true the evidence that supports Gallardo's position and giving her the benefit of all legitimate inferences from that evidence, we find that the trial record warranted the grant of Walmart's motion for judgment at trial and motion for judgment notwithstanding the verdict.  See R. 4:40-1, -2. Accordingly, we hold that Walmart was entitled to judgment dismissing plaintiff's claims based on the ongoing storm rule.

We do not reach the question whether Walmart could properly be held liable based on the conduct of Land Pros, given the trial court's finding that Land Pros was not negligent and entering summary judgment dismissing Gallardo's claims against it.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for the entry of summary judgment dismissing Gallardo's claims against Walmart.

CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS and WAINER APTER join in JUSTICE PATTERSON's opinion.  JUSTICE FASCIALE filed a dissent in which JUSTICES NORIEGA and HOFFMAN join.

Haydee Gallardo,

Plaintiff-Respondent,

v.

Walmart, Debra Lewis,
Wal-Mart Stores, Inc.,
Union 22 Plaza, LLC,
Wal-Mart Real Estate
Business Trust, and
Wal-Mart Stores East, L.P.,

Defendants-Appellants,

and

Land Pros of New Jersey, LLC,

Defendant.

JUSTICE FASCIALE, dissenting.

Today, the majority ventures far afield from bedrock tort principles, first erring in its novel misreading of Pareja v. Princeton International Properties, 246 N.J. 546 (2021), and further erring in applying that novel misreading to this case. By holding for the first time today that active snow remediation that increases the risk of harm to plaintiffs cannot be actionable -- even if unreasonably performed -- unless that remediation itself somehow also seems "unusual," the majority stretches Pareja's holding far beyond its intended

1

reach. In so doing, the majority superimposes a novel, ill-defined, and unworkable "unusualness" element to Pareja's exceptions that should never be applied to this case -- a case which predates Pareja's framework and lies outside its holding. As a result, the majority dismisses plaintiff's complaint, despite the jury's finding that plaintiff suffered serious, permanent injuries as a direct result of Walmart's negligence. The majority's disposition is not merely an isolated misstep; it is a wholesale departure from our well-established precedent, a misapplication of the ongoing storm rule's exceptions, and an injustice to the parties here and to future litigants alike, leaving New Jersey residents at the mercy of tortious snow and ice removal efforts each winter.

To begin, the majority fundamentally misinterprets Pareja's first exception[1] by adding an undefined "unusualness" requirement.

Pareja's framework is clear: commercial landowners do not have a duty to affirmatively act while precipitation is falling, but once they do act and "increase the risk" to plaintiffs, 246 N.J. at 559, a duty of care is reimposed as to those actions, and their execution must be reasonable or liability will follow. Today, the majority instead insists that Pareja's first exception reimposes a

---

[1] In adopting the ongoing storm rule, Pareja announced "two exceptions that could impose a duty: if the owner's conduct increases the risk, or the danger is pre-existing." 246 N.J. at 549. This appeal involves only the first exception.

duty of care on a commercial landowner <u>not only</u> if (1) the landowner voluntarily increases the risk of harm, <u>but also</u>, <u>separately</u> (2) does so under circumstances that a court believes to be "unusual." <u>See</u> <u>ante</u> at ___ (slip op. at 35). The majority attempts to ground this novel holding in our precedent, but such an attempt misreads both <u>Pareja</u> and the foundation upon which it was built.

> <u>Pareja</u> explained its exceptions as follows:

> > <u>The following unusual circumstances present exceptions to the ongoing storm rule.</u> <u>First</u>, commercial landowners may be liable <u>if their actions increase the risk</u> to pedestrians and invitees on their property, for example, by creating "unusual circumstances" where the defendant's conduct "exacerbate[s] and increase[s] the risk' of injury to the plaintiff.". . .

> > <u>Second</u>, a commercial landowner may be liable where there was <u>a pre-existing risk on the premises</u> before the storm. For example, if a commercial landowner failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded[.]

> > [246 N.J. at 558-59 (emphases added) (quoting <u>Terry v. Cent. Auto Radiators, Inc.</u>, 732 A.2d 713, 717-18 (R.I. 1999)).]

A plain reading of <u>Pareja</u> illustrates that those two circumstances -- increasing the risk and a pre-existing risk -- are <u>themselves</u> the "unusual circumstances" that reimpose a legal duty of reasonable care on the landowner during a storm. The <u>Pareja</u> Court used the term "unusual circumstances" to

3

describe the two exceptions, not to impose some separate, undefined element. In other words, a circumstance is unusual solely because it increases the risk, not because the risk-increasing conduct is itself also "unusual." Indeed, the Rhode Island Supreme Court, which the majority asserts "confirmed . . . the 'unusual circumstances' test of Terry," ante at ___ (slip op at 33), has unequivocally clarified that in Terry, "[the] . . . circumstances were unusual because the defendant 'exacerbated and increased the risk,'" Berardis v. Louangxay, 969 A.2d 1288, 1292 (R.I. 2009) (emphasis added) (quoting Terry, 732 A.2d at 717-18), nothing more.

If there was any doubt, in incorporating the first exception, Pareja reviewed a body of law which uniformly held that even when there is no duty to act, if one does act in a manner that increases the risk of harm to plaintiffs, that individual assumes a duty of reasonable care to those plaintiffs -- a holding that is in line with the application of equivalent exceptions in the other jurisdictions that have adopted the ongoing storm rule, as well as our state's tort law. See Restatement (Second) of Torts § 323 (Am. L. Inst. 1965) (explaining the general tort rule that a duty voluntarily undertaken must not "increase[] the risk of such harm," with liability hinging on whether reasonable care was exercised). Indeed, as the trial judge explained to counsel at the charge conference, our "law was always, before [Pareja,] and continued to be

4

[after], that if you choose to do something, you better do it right." <u>Ante</u> at ___ (slip op. at 12). We have <u>never</u> held, and no court that I have found in New Jersey or otherwise has ever held, that a commercial landowner's voluntary, unreasonable acts are immune from liability simply because precipitation is falling.

The majority contravenes those well-established principles by severing the "unusual circumstances" language from <u>Pareja</u>'s two clearly defined unusual circumstances: "increase the risk" and "pre-existing risk." 246 N.J. at 549 ("[W]e . . . recognize two exceptions that could impose a duty: if the owner's conduct increases the risk, or the danger is pre-existing."). I disagree with the majority's sole rationale for doing so -- its concern that, without a separate "unusualness" requirement, commercial landowners would be discouraged from undertaking any remedial efforts during a storm. <u>See</u> <u>ante</u> at ___ (slip op. at 34-35). As plainly written, the first <u>Pareja</u> exception does not punish commercial landowners for acting; it merely requires that, if they choose to act, they do so with <u>reasonable</u> care. Thus, as is the case in other jurisdictions and our law before today, it would not be the act of salting or shoveling that triggers liability, but rather, it would be the <u>negligent execution</u> of those acts. By contrast, the majority's policy rationale turns tort law on its head, incentivizing unreasonable conduct and leaving innocent, injured victims

5

without recourse.[2] In my view, the law should continue to incentivize reasonable conduct and provide recourse for injured parties.

If the majority's new interpretation of Pareja's first exception was somehow correct (which it is not), then the majority nonetheless errs in applying Pareja's framework to begin with, as it does not and cannot govern this appeal for two reasons.[3]

_____

[2] The majority bases its holding on the concern that, under my reading, "a court could impose a duty on a commercial landowner if that landowner or its contractor applies a de-icer such as salt during an ongoing storm or shovels the snow, but its efforts fail and a pedestrian or business invitee is injured." See ante at ___ (slip op. at 34). If by "fail" the majority means that a pedestrian or business invitee is injured despite reasonable remediation efforts or injured on a part of the premises unrelated to the remediation efforts, then that concern is misplaced -- neither my reading, nor Pareja's plain text, nor the underlying legal principles would mean that a landowner who "fails" at perfectly remediating the snowfall across the entire premises would face liability. But if by "fail" the majority means that a pedestrian or business invitee is injured because the landowner's action was unreasonable and increased the risk, then that is precisely when liability should attach. Voluntary, affirmative conduct that is unreasonably executed has always resulted in liability -- under Pareja, longstanding New Jersey law, and other jurisdictions that apply the ongoing storm rule.

[3] The majority finds that the merits of my position -- that its novel two-step "unusualness" standard should not govern this 2015 accident -- ought to be ignored simply because "[i]n a matter litigated for more than a decade, in which the parties and amicus are represented by seasoned counsel, [this argument is] asserted -- for the first and only time -- in the dissent." See ante at ___ (slip op. at 21). But no matter how seasoned, no counsel could have raised arguments challenging the applicability of the majority's newly invented interpretation, employed by this Court for the very first time in this appeal.

6

First, the majority errs by applying its novel interpretation of Pareja's framework to plaintiff's 2015 accident. It was not until six years later, in 2021, that the Pareja Court adopted -- "[f]or the first time" -- the ongoing storm rule, under which a commercial landowner's duty to remove snow or ice from public walkways is suspended "until a reasonable time after the cessation of precipitation," along with the corresponding exception at the heart of this appeal: "[A] commercial landowner may [nonetheless] be liable if their actions increase the risk to pedestrians and invitees on their property." 246 N.J. at 559 (emphasis added). Prior to Pareja, no case had ever insulated landowners from a duty of reasonable care during snowfall on the basis of "unusual circumstances," and no commercial entity -- Walmart included -- could have ever reasonably anticipated that such a standard governed its conduct.

Yet, the majority now dismisses plaintiff's complaint and vacates the jury's verdict -- eleven years after the accident -- by introducing a new requirement: that a landowner's duty during a storm is triggered only if the risk-increasing conduct also seems "unusual." It is beyond dispute that this "unusual circumstances" language did not exist in New Jersey tort law at the time of the accident. As a result, it cannot control here and plaintiff therefore cannot have been required to present at the motion record evidence of "unusual

7

circumstances" to reestablish a legal duty of care. Accordingly, the majority's de novo grant of summary judgment is extraordinarily unfair to the parties, based entirely on a legal standard that was not articulated until today.

In contrast, the trial judge properly instructed the jury on the law that governed at the time: well-established principles of general negligence. The trial judge rightly rejected Walmart's request to instruct the jury on Pareja's new framework, explaining that "this case is not Pareja" and that the question for the jury was simply whether Walmart failed to exercise reasonable care in its actions. Any suggestion that Pareja's new framework -- and especially its "unusual circumstances" descriptor -- was part of New Jersey law at the time of the accident is belied by both the text of Pareja and the history of our tort law. Indeed, the parties themselves highlight the novelty of Pareja's framework, with plaintiff emphasizing that Pareja is a "drastic change in the case law guiding the responsibility of commercial landowners during a snowstorm," and with Walmart characterizing the Pareja decision as announcing "special standards governing a negligence analysis relating to an ongoing storm." (emphases added).[4] Thus, regardless of any interpretations of

_____

[4] Throughout the proceedings, the parties repeatedly and directly raised the applicability of Pareja and its exceptions, an issue of significant public importance that warrants this Court's review to ensure clarity and consistency

8

*Pareja* today, the law prior to *Pareja* was perfectly clear: commercial landowners owed a duty of reasonable care for their voluntary acts on their premises, and liability attached for the negligent execution of such acts. Because the trial judge correctly charged the jury with that applicable law, the jury's verdict should be upheld.

Second, *Pareja* cannot govern this appeal because it is materially distinguishable from this case -- its ongoing storm rule does not apply to plaintiff's accident, which occurred in Walmart's private parking lot.[5] In applying *Pareja*, the majority expands *Pareja*'s holding to cover not only "public walkways" -- the express focus of *Pareja* and the decades of precedent upon which it relied -- but also to cover private premises voluntarily left open for business during a storm. 246 N.J. at 548 (emphasis added). There is a critical distinction between public and private premises liability -- as this Court has long recognized, the law has never treated as interchangeable the duty of care owed to plaintiffs on public sidewalks and private property. The status of the injured party, the nature of the property, and the relationship

---

in the law. It remains the Court's fundamental duty to determine and apply the correct governing law.

[5] Even if *Pareja* applies to a commercial owner's private parking lot, Walmart's conduct during the storm reimposed a duty of reasonable care. The jury found Walmart breached that duty.

9

between the parties matter here, and have always mattered in our longstanding tort law. The trial judge correctly acknowledged this distinction in denying Walmart's motion for a judgment notwithstanding the verdict (JNOV) and finding Pareja inapplicable.

Finally, because a duty of reasonable care was reimposed on Walmart due to its conduct during the storm, the majority errs by disposing of this case on a summary judgment motion despite the litany of disputed issues of fact. At the end of this opinion, I point to over twenty disputed issues of material fact as to the reasonableness of Walmart's conduct (including expert testimony as to increase of risk to invitees) that preclude summary judgment. Nevertheless, the jury has already heard and weighed the evidence, found that Walmart acted negligently, and awarded plaintiff over a million dollars, which the majority now sets aside over a decade later.

\* \* \*

In sum, because the trial judge instructed the jury on the correct law, I would uphold the jury's verdict and plaintiff's $1,328,658.59 judgment compensating her for her injuries.[6] I would not adopt the majority's novel

---

[6] The jury awarded plaintiff $500,000 for pain and suffering, $213,941 for past medical expenses, and $414,000 for future medical expenses. The judge molded the award to include prejudgment interest and entered an award for $1,328,658.59.

10

interpretation of Pareja's first exception. As this Court has repeatedly emphasized, the central aim of tort law is to prevent accidents by encouraging reasonable care and to ensure that those who cause harm bear the cost of their wrongdoing. The majority's policy decision -- to insulate Walmart and all other commercial landowners from liability arising from unreasonable snow removal -- does not effectuate that central aim.

New Jersey is home to over nine million residents. As a result of the majority's decision today, so long as precipitation is falling, if those residents visit a Walmart -- a grocery store, a doctor's office, or any commercial property -- they do so at their own peril.

For those reasons, I dissent.

## I.

Because the majority grants summary judgment and dismisses the complaint with prejudice eleven years after the accident, I consider the facts in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.

On January 3, 2015, at approximately 11:30 a.m., snow, sleet, and rain began to fall at the Walmart location in Union Township. The precipitation continued until approximately 3:30 p.m.

11

Under the terms of Walmart's lease with its landowner, the landowner assigned maintenance responsibility to Walmart.[7] Walmart contracted with Land Pros of New Jersey, LLC (Land Pros) to perform snow and ice removal at the premises. Under its contract, Land Pros was required to "apply anti-icing or de[-]icing agents to the site before snowfall (commonly known as a pretreatment)."

Although aware of the expected storm and despite its obligation under the contract, Land Pros did not pretreat the lot with icing or de-icing agents. Instead, Land Pros waited until the storm started before it commenced attempts to address the dangerous ice and snow conditions present before plaintiff arrived at Walmart. At approximately 12:35 p.m., during the ongoing storm, Land Pros began to apply de-icing agent/salt, and continued to do so for about forty minutes.

At about 1:30 p.m., plaintiff arrived at Walmart during the ongoing storm and slipped and fell in the parking lot on "slushy ice, snow." She sustained serious permanent injuries to her lower back, shoulder, neck, groin, and leg.

---

[7] Walmart leased the premises from landowner Union 22.

B.

Plaintiff sued Walmart and the store manager (collectively, Walmart), seeking compensation for the injuries she sustained. Walmart filed a third-party breach of contract complaint against Land Pros. Plaintiff then amended her complaint and named Land Pros as a direct defendant. In plaintiff's amended pleading, she did not allege that Walmart was vicariously liable for Land Pros' negligence. Rather, plaintiff maintained that Walmart's direct negligence caused her injuries, as her claim focused on Walmart's breach of its nondelegable duty to ensure the parking lot was reasonably safe for business invitees.

Before the discovery end date, and pre-Pareja, Land Pros filed a motion for summary judgment. Only plaintiff opposed the motion. The motion judge, who was different from the trial judge, erroneously found that Land Pros "was not obligated to remove ice and snow until after the storm ended" and that "no duty arose under the circumstances until after the snowstorm ended." He reached this conclusion despite the fact that (1) Land Pros is not a commercial landowner and the sidewalk case law cited by the judge addressed only commercial landowners (not snow removal contractors); (2) Land Pros' scope of work remained disputed; (3) Land Pros attempted to treat the parking lot during the storm, while, by its own admission, the "snow, sleet and rain . . .

13

began to fall swiftly"; and (4) discovery remained incomplete, which prevented plaintiff from obtaining more details of Land Pros' contractual duties to remove and remediate ice and snow. Nearly two years before this Court released Pareja, that motion judge granted partial summary judgment and dismissed all claims against Land Pros, including Walmart's breach of contract claim.

After this Court released the Pareja decision in 2021 -- six years after the accident occurred -- Walmart filed a motion for summary judgment, contending that under Pareja, it had no duty to remove ice and snow when plaintiff fell.[8] The same motion judge correctly found that disputed issues of fact precluded entering summary judgment in Walmart's favor. He agreed with plaintiff's arguments that Walmart attempted to remove snow and ice during the storm and, applying general negligence principles, that disputed issues of material fact existed as to whether Walmart itself breached its nondelegable duty to business invitees to ensure its property was free of dangerous conditions. The parties then proceeded to trial with Land Pros as an empty chair.

---

[8] Walmart had twice before been denied summary judgment due to disputed issues of material fact.

14

At trial, plaintiff introduced evidence that while Walmart remained open during the storm, it breached its nondelegable duty to make its premises reasonably safe for its invitees. Specifically, plaintiff introduced proofs that Walmart failed to follow its own standard operating procedure for pretreating the parking lot surface, that Walmart delegated its responsibility to make its premises safe to Land Pros, and that Walmart failed to inspect or supervise Land Pros' work. Additionally, Walmart's assistant manager admitted that the parking lot "should have been better cleaned off" and, despite that knowledge, did not ask Land Pros to address the dangerous condition it had created and remove the snow and ice.

Plaintiff also introduced testimony from the owner of Land Pros, John Fierro. Fierro's testimony revealed that he believed he had no written contract for snow and ice management and that, after spreading salt, Fierro did not monitor the parking lot condition and failed to return despite the ongoing snow, sleet, and rain.

Plaintiff's expert in snow and ice management, John Nelson Weist, opined that: Fierro had no formal training in snow and ice management; Fierro had no written policies for snow and ice management; Fierro failed to inspect the property at reasonable intervals; and Fierro failed to pretreat the parking

lot surface, even though he monitored the weather.  Weist then explained that "Fierro's application of salt, once accumulation occurred, decreased the overall traction of the surface" and "applying de[-]icer as in this case will cause increased slickness if the surface/ground temperature is around or above [thirty-two degrees]."  Weist concluded that "the manner in which . . . Fierro addressed the conditions at Walmart required/caused/created the further need not only for [Land Pros] but for Walmart to . . . follow-up by clearing the resulting snow and slush."  He further stated that the throwing of de-icer on snow already on the ground was "absolutely not" acceptable by industry standards, because with

> [t]he ground temperature being at least freezing, [thirty-two] degrees, when warmer water, liquid hits it, it immediately becomes black ice.  You can't see it. . . . [M]ost times you can't see it.  The way people experience it is when they take a flip through it and hurt [themselves].
>
> So, one . . . thought here is that when he put salt[,] and apparently not enough salt to melt it all[,] because we have the pictures of what the result was, when he put the salt down, now he throws it on top of the snow and that snow melts and runs down[,] and when it hits that cold untreated surface it becomes black ice.  So he essentially exacerbated the condition by throwing water on it, which is what he did.
>
> [(emphasis added).]

16

Weist thus concluded that this action increased the risk of harm: ice formed in Walmart's parking lot and was permitted to remain, but it would have been corrected had Walmart conducted a reasonable inspection. He further opined that Walmart's actions violated accepted standards due to Walmart's lack of personnel trained in snow and ice management and monitoring; and that Walmart failed to have in place and follow proper procedures to make its premises safe for invitees, particularly as Walmart's management knew or should have known that the dangerous accumulation of snow and ice existed in its parking lot. Weist's testimony and conclusions were thus consistent with plaintiff's theory of the case -- that Walmart breached its nondelegable duty to ensure its premises are safe for business invitees.

Before the close of evidence, Walmart requested that the trial judge charge the jury in accordance with Pareja even though (1) the Pareja framework at issue here did not exist at the time of the accident; (2) plaintiff fell in a commercial private parking lot, not a public sidewalk; and (3) the exception concerns the reimposition of a duty of care, a legal question that would never be decided by a jury. Nevertheless, Walmart requested, in part, that the judge give the following jury charge:

> A commercial landowner may be liable if their actions
> increase the risk to pedestrians and invitees of their

17

property, for example, by creating **unusual circumstances** where the defendant's conduct exacerbate[s] and increase[s] the risk of injury to the plaintiff. In this case, . . . [p]laintiff claims that when Walmart's snow contractor applied salt on the ground, during the snowstorm, an **unusual circumstance** was created, that increased the risk that pedestrians would fall. Walmart denies that the application of an ice melting agent, during a snowstorm, created an **unusual circumstance**, which increased inherent hazards to pedestrians, like . . . [p]laintiff.

[(emphases added).]

Plaintiff opposed that request and instead urged the trial judge to charge the jury on the applicable, existing principles of negligence, ordinary care, and foreseeability. In other words, charge the applicable law. The trial judge agreed with plaintiff and instructed the jury on those longstanding tort principles. After the final jury charge, Walmart's counsel re-raised <u>Pareja</u> and argued that the judge should have instructed the jury as he had proposed, which included multiple references to "unusual circumstances." The trial judge again denied that request and concluded that this "case is not <u>Pareja</u>. This case is dealing with . . . <u>a question of fact</u> for the jury to decide under <u>regular negligence</u> as in <u>a pre-Pareja case</u>." (emphases added).

The jury found that Walmart's actions or inactions, as to its voluntary "snow removal and/or treatment of the parking lot," were negligent; that Walmart's negligence proximately caused plaintiff's accident; and that

18

Walmart's negligence proximately caused plaintiff's permanent injuries. It then awarded her damages for the injuries caused by Walmart's negligence. The jury returned its verdict against Walmart even though Walmart pointed to Land Pros as an empty chair.

Walmart moved for a new trial relying on Pareja. Plaintiff's counsel argued, and the trial judge agreed, that Pareja was inapplicable. As the judge remarked, the plaintiff in Pareja slipped on the sidewalk. And in denying Walmart's motion for JNOV, the judge specifically repeated that Pareja dealt with a sidewalk. The judge explained that the facts in this case are distinguishable from Pareja -- plaintiff's case focused not on a sidewalk, but rather on Walmart's nondelegable duty to make a private business parking lot safe for invitees.

## D.

Walmart appealed. The Appellate Division erroneously reversed and vacated plaintiff's verdict, determining that the jury should have been instructed on Pareja's new legal framework. The majority now compounds that error by granting Walmart summary judgment on the basis that Pareja purportedly immunizes Walmart from its unreasonable yet "ordinary" snow removal activities.

The majority fundamentally errs by granting Walmart summary judgment based on its interpretation of Pareja's first exception -- that it immunizes commercial occupiers of land, like Walmart, from liability for their unreasonable -- but somehow, in the majority's opinion, "usual" -- actions during a storm.

Under Pareja, "a landowner does not have a duty to remove snow or ice from public walkways until a reasonable time after the cessation of precipitation" unless "the owner's conduct increases the risk" of injury to the plaintiff. 246 N.J. at 548-49. In announcing that exception, the Pareja Court drew on case law that uniformly held that even when there is no affirmative duty to act, if a defendant does act, that action must be reasonable or liability will follow. E.g., Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 152-53, 155 (1981) (explaining that historically, despite the prior "no liability" public-sidewalk rule, a landowner was nevertheless liable "for repairs voluntarily undertaken but negligently performed" (collecting cases)).

Accordingly, I would hold that the first Pareja exception reimposes a duty of reasonable care on commercial landowners when they affirmatively take an action that "increase[s] the risk to pedestrians and invitees on the property." 246 N.J. at 559. Here, because Walmart voluntarily increased the

risk of harm to plaintiff, Walmart owed her a duty of reasonable care in undertaking those actions, and the trial judge correctly instructed the jury on applicable general negligence principles for business invitees.

Indeed, as the trial judge correctly observed, under a plain reading of Pareja's first exception,

> the [Pareja] Court didn't change the [pre-existing] law, by the way. The exception existed prior to [Pareja]. The exception was basically, if you undertake -- they made it an exception but it was the law before. And if you undertake to do something -- you know, you go out and shovel your sidewalk and you do a bad job and you weren't obligated to shovel your sidewalk, you created a liability for yourself. <u>You know, it's -- it's the old maxim. You -- have no obligation to do it, but if you do it, you better make sure you do it right because you've now created -- you've undertaken a duty you didn't have to do.</u>

The trial judge understood that under Pareja, commercial landowners "have no absolute duty to go out and do something during a continuing storm," but "there's already all this law in place that says if you go out and do it, you'd better make sure you do it right because now you've undertaken the duty."

The majority now eschews that well-established principle and alters our longstanding law under the guise of Pareja's descriptive use of the phrase "unusual circumstances." Specifically, in concluding as a matter of law that Walmart did not have a duty of care on the basis that its conduct was not "unusual," the majority now, for the first time, redefines Pareja's exception by

21

adding an additional requirement -- that a court find that a defendant's actions must qualify as "unusual" -- for it to apply and reimpose a duty of care. I disagree with that interpretation of <u>Pareja</u>'s first exception because it (A) is unsupported by a fair reading of <u>Pareja</u> and the case law it relied on; (B) deviates from how other jurisdictions have interpreted equivalent exceptions to their ongoing-storm doctrines; (C) fails to provide any guidance for future cases; and (D) is based solely on a policy rationale that undermines tort law.

A.

First, a plain reading of <u>Pareja</u> belies the majority's novel two-step understanding of <u>Pareja</u>'s first exception.

The majority bases its interpretation on the fact that "[t]he term 'unusual circumstances' appears in two parts of the opinion." <u>Ante</u> at ___ (slip op. at 30). But the majority's reading ignores the context of the "unusual circumstances" phrase. In <u>Pareja</u>, the phrase "unusual circumstances" is used to <u>describe</u> circumstances where a <u>duty of care is reimposed</u> on a commercial landowner during snowfall:

> The following <u>unusual circumstances present exceptions to the ongoing storm rule</u>. <u>First, commercial landowners may be liable if their actions increase the risk to pedestrians and invitees on their property</u>, for example, by creating "unusual circumstances" where the defendant's conduct "exacerbate[s] and increase[s] the risk" of injury to the plaintiff. . . .

22

Second, a <u>commercial landowner may be liable</u> <u>where there was a pre-existing risk on the premises</u> <u>before the storm</u>. For example, if a commercial landowner failed to remove or reduce a pre-existing risk on the property, including the duty to remove snow from a previous storm that has since concluded[.]

[246 N.J. at 559 (emphases added) (quoting <u>Terry</u>, 732 A.2d at 717-18).]

Thus, under <u>Pareja</u>, those two circumstances -- increasing the risk and a pre-existing risk -- are in-and-of themselves the "unusual circumstances" that reimpose a duty of care. Indeed, in first announcing -- within the introduction of the opinion -- the exceptions, the Court made no reference to "unusual circumstances." Instead, <u>Pareja</u> states that, "[i]n addition to adopting the [ongoing storm] rule, <u>we also recognize two exceptions that could impose a</u> <u>duty</u>: if the owner's conduct <u>increases the risk</u>, or the <u>danger is pre-existing</u>." <u>Id.</u> at 546-47 (emphases added). Fairly read, such circumstances are already "unusual." A plain reading of <u>Pareja</u> speaks for itself.

To understand how <u>Pareja</u>'s exceptions should operate, we need look no further than the Court's application in <u>Pareja</u> itself. In determining whether an exception applied to the facts of that case, the <u>Pareja</u> Court explained: "[The defendant] owes [the plaintiff] a duty only in unusual circumstances, none of which we find here. [The defendant] <u>took no action to increase [the</u> <u>plaintiff's] risk</u>, and the record shows that <u>the ice on the sidewalk was not a</u>

23

pre-existing condition." Id. at 559-60 (emphases added). The Pareja Court's analysis turned on whether the defendant's conduct fit into the two defined "unusual circumstances" -- increase the risk or a pre-existing risk. See ibid. Beyond those two categories, the Court did not make a separate determination as to the "usualness" or "unusualness" of the setting. See ibid. Neither should the majority make such a determination today.

Further, in discussing the appropriate duty for a commercial landowner during a storm, Pareja itself, significantly, acknowledged "that measures like spreading salt in a[n] . . . ice storm can . . . enhance the danger" to the public, 246 N.J. at 557 n.1. That is exactly what plaintiff alleged and the jury found here. And Pareja further explained that a duty of care always exists wherever a "landowner[] undertook to remove snow from a public sidewalk and, 'through [their own] negligence[,] a new element of danger or hazard, other than the one caused by natural forces, [was] added to the safe use of the sidewalk by a pedestrian.'" 246 N.J. at 555 (alterations in original) (quoting Saco v. Hall, 1 N.J. 377, 381 (1949)). Thus, Pareja's reimposition of a duty during snowfall must extend to Walmart's voluntary spreading of salt during a storm, which enhanced the danger to invitees beyond that which existed naturally.

24

B.

Second, any broader interpretation of Pareja's first exception deviates from the way equivalent exceptions operate in other jurisdictions' case law, including Terry v. Central Auto Radiators, Inc., 732 A.2d 713 (R.I. 1999), upon which the majority relies.

In Pareja, to demonstrate application of its first exception, the Court relied on Terry, 732 A.2d at 717-18, wherein the Rhode Island Supreme Court adopted the ongoing storm rule and applied an equivalent exception. In Terry, as the Pareja Court explained, "[t]he Supreme Court of Rhode Island held that 'unusual circumstances' existed where a defendant 'actively increas[ed] . . . [the] risk [of injury] by placing [the plaintiff's] vehicle so far distant and then directing her to make the longer walk over the treacherous icy terrain.'" Pareja, 246 N.J. at 559 (alterations in original) (quoting Terry, 732 A.2d at 718). In so doing, "[t]he defendant . . . exacerbated and increased the risk of the plaintiff's falling." Terry, 732 A.2d at 718. Resultingly, the defendant owed the plaintiff a duty of reasonable care. Ibid.

In imposing the duty, the Terry court made its rationale clear: Rather than arbitrarily labeling circumstances as "usual" or "unusual," the Terry court explained that, as always, "[t]he linchpin in determining the existence of any duty owed to [a plaintiff is] the foreseeability of the risk of injury to [the

25

plaintiff] by [the defendant's] actions." Ibid. (quoting Splendorio v. Bilray Demolition Co., 682 A.2d 461, 466 (R.I. 1996)). And the Terry Court further noted the tort axiom that, "[i]n carrying on any activity, a property owner must use reasonable care for the safety of invitees and refrain from activities that increase the danger to invitees." Id. at 718 n.3 (emphases added) (citing J.D. Lee & Barry A. Lindahl, 3 Modern Tort Law, § 39.10 (rev. ed. 1998)). Accordingly, because longstanding tort principles provide that when a defendant's conduct foreseeably exacerbates or increases the risk of harm to plaintiffs, that conduct itself creates a duty of care, and thus, such conduct must trigger the ongoing-storm-rule exception. See ibid.

That principle remains evidently clear throughout the subsequent Rhode Island Supreme Court case law upon which the majority relies. In Berardis v. Louangxay, the court explained that the Terry "circumstances were unusual because the defendant 'exacerbated and increased the risk' that the plaintiff would fall and suffer an injury." 969 A.2d 1288, 1291-93 (R.I. 2009) (quoting Terry, 732 A.2d at 717). The court's use of the term "because" is significant: the court found only that the defendant's act of increasing the risk made the circumstances unusual. Ibid. (quoting Terry, 732 A.2d at 717). In other words, the circumstances were unusual solely "because" the defendant "increased the risk," not because there was some separate, undefined,

26

"unusualness" to the defendant's risk-increasing conduct. Terry, 732 A.2d at 717.

In subsequent Rhode Island cases where there were no "unusual circumstances," as in Pareja, the court explained that "unusual circumstances" did not exist to reimpose a duty of care on the landowner because the landowner's conduct did "not itself increase any risk to the plaintiff that did not already exist naturally as a result of the storm." Berardis, 969 A.2d at 1293. Similarly, in Benaski v. Weinberg, the court found nothing "unusual" about the circumstances when the defendant's conduct had not "exacerbated the risk that the plaintiff undertook," again, with no separate "unusualness" inquiry. 899 A.2d 499, 503-04 (R.I. 2006) (emphasis added) (explaining that "[t]he linchpin of [the court's] duty analysis in Terry was the presence of a heightened risk" (emphasis added)). Despite the majority's reliance on those cases, the Rhode Island Supreme Court has never independently opined on the "unusualness" of a given circumstance beyond the well-established "increase-the-risk" linchpin. Ibid. The case law is unambiguous.

And in jurisdictions that have adopted the ongoing storm rule without reference to the "unusual circumstances" descriptor, their analogous exceptions operate in the exact same manner, consistent with longstanding tort principles. See, e.g., Aronov v. St. Vincent's Hous. Dev. Fund Co., 43

N.Y.S.3d 99, 100 (App. Div. 2016) ("If a property owner has elected to clear a sidewalk during a storm in progress, the owner is required to act with reasonable care and may be liable if its efforts create a hazardous condition or exacerbate a natural hazard created by the storm." (collecting New York cases)); Avalos v. Pulte Home Corp., 474 F. Supp. 2d 961, 970 (N.D. Ill. 2007) ("Under Illinois law, a landowner does not have a duty to remove natural accumulations of snow and ice, but the landowner who voluntarily removes snow or ice negligently may be subject to liability."); Wailes v. Hy-Vee, Inc., 861 N.W.2d 262, 267 (Iowa Ct. App. 2014) (explaining that, notwithstanding Iowa's "continuing storm" doctrine, a landowner may nonetheless be liable if their efforts "created a hazardous condition or exacerbated the natural hazards created by the storm . . . consistent with the general rule that an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm" (citation omitted)); see generally Restatement (Second) of Torts § 323 (explaining the general tort rule that a duty voluntarily assumed must not "increase[] the risk of such harm," with liability hinging on whether reasonable care was exercised). Any interpretation of Pareja's first exception in tension with that fundamental tort principle significantly misses the mark.

28

C.

Third, the majority's holding provides no predictable or workable legal standard -- and therefore no future guidance -- as to how its erroneous interpretation of Pareja's "unusual circumstances" exceptions should apply in subsequent cases. Specifically, the majority leaves us without any legal standard or definition for what the "unusual circumstances" phrase actually means.

Practically speaking, it is unworkable to require that judges additionally consider whether circumstances were "unusual" as a matter of law -- beyond whether the defendant's conduct increased the risk -- in order to reimpose a duty of care during snowfall. Pareja expressly defined the two unusual circumstances; outside those definitions, the "usualness" of a defendant's actions as opposed to its "unusualness" is not a meaningful legal test for the imposition of a duty of care. Such a requirement, especially without any clear guiding legal standard, will inevitably lead to confusion for our trial judges and litigants, and result in arbitrary outcomes.[9]

---

[9] And even beyond the first Pareja exception, under the majority's holding, the applicability of the second exception -- whether there was a "pre-existing risk on the premises before the storm" -- will similarly turn on haphazard determinations as to whether the pre-existing risk not only existed, but was also one the court finds to be "unusual." See id. at 559.

29

D.

Finally, and most importantly, the majority's interpretation undermines tort law. Its interpretation amounts to blanket immunity from liability for commercial landowners' "normal" yet unreasonable snow and ice removal activities. It is well known that "one of the main functions of tort law is to prevent accidents" by encouraging landowners to exercise ordinary and reasonable care. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 448 (1993) (emphasis added). The aim of tort law is to ensure that defendants who tortiously cause plaintiffs harm are held liable for their wrongdoing. See McCarrell v. Hoffman-La Roche, Inc., 227 N.J. 569, 592 (2017) ("The essential purpose of substantive tort law is to provide a remedy to a party who has been wronged."). Yet, under the majority's reasoning, innocent parties who suffer injuries due to negligent snow removal are denied a cause of action and are unable to seek relief. By immunizing unreasonable conduct, victims absorb the losses that tortfeasors should bear, and the tortfeasors retain the benefit of their wrongful conduct. See People Express Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246, 255 (1985) (explaining that the "overarching purpose of tort law" is that "wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct").

By contrast, I would hold that a commercial occupier of land cannot voluntarily undertake snow and ice removal, do so in an unreasonable manner that injures plaintiffs, and then be simultaneously immunized from liability under Pareja's first exception to the ongoing storm rule. In other words, voluntary snow and ice removal can never be "normal" if it is done unreasonably. Under Pareja, commercial landowners no longer have a duty to affirmatively undertake snow and ice remediation during an ongoing storm. But if they voluntarily decide to do so, Pareja's first exception reimposes a duty of reasonable care on them. Those ordinary tort principles must apply to prevent accidents and compensate innocent victims -- here, business invitees.

Notably, the rationale underlying the majority's disregard for those principles in its expansion of the Pareja exception rests solely on its policy preference that it disapproves of the consequences business owners might otherwise face. The majority explains:

> Were we to construe the first *Pareja* exception as the trial court and Gallardo interpreted it and the dissent contends that we should, that exception would eviscerate the ongoing storm rule. Absent the "unusual circumstances" requirement, a court could impose a duty on a commercial landowner if that landowner or its contractor applies a de-icer such as salt during an ongoing storm or shovels the snow, but its efforts fail and a pedestrian or business invitee is injured. . . . Such a rule would apply with equal force to a family operating a single store or a major corporation such as Walmart. It would incentivize landowners and their

31

> contractors to forgo any remediation effort until a storm is over, thereby increasing the risk of injury to pedestrians and invitees.
>
> [Ante at ___ (slip op. at 34-35) (emphases added) (citation omitted).]

But if applied as I read the first exception (and as other jurisdictions apply equivalent exceptions), it does not punish commercial landowners for voluntarily engaging in remedial efforts when they choose to stay open during a storm; it merely imposes a duty of reasonable care on them if they voluntarily increase the risk of harm to business invitees. Thus, when interpreted as plainly written, Pareja's exception simply discourages commercial landowners from unreasonably engaging in remedial efforts towards its business invitees, as only under those circumstances could they incur liability. If application of Pareja's framework -- the ongoing storm rule and its two exceptions, as plainly written, -- is as problematic as the majority now finds, then the purported unworkability of Pareja, along with the resulting questions of public policy, are matters better left to the Legislature at this juncture.

### III.

If the majority's two-step understanding of Pareja's first exception was somehow correct (which it is not), then the majority nonetheless errs by applying Pareja's framework to begin with. First, (A) Pareja's framework

32

cannot control because neither it -- nor the majority's understanding of its "unusual circumstances" language -- was the governing law at the time of plaintiff's accident. And second, (B) even if "unusual circumstances" <u>was</u> the law at the time of the accident, <u>Pareja</u>'s holding expressly governs public sidewalk liability -- it does not extend to the facts of this case, where plaintiff fell on private property.

A.

1.

The majority erroneously applies its novel interpretation of <u>Pareja</u>'s framework to an accident that occurred six years before the <u>Pareja</u> Court adopted the ongoing storm rule and incorporated the exception at issue.[10]

---

[10] The majority correctly explains that the parties frame the issues in an appeal. <u>See</u> <u>ante</u> at ___ (slip op. at 23). Here, the parties have directly raised the applicability of <u>Pareja</u> and its exceptions throughout the proceedings below, and the issue is of significant public importance. <u>See</u> <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1977); <u>Borough of Keyport v. Maropakis</u>, 332 N.J. Super. 210, 216 (App. Div. 2000) ("[I]f the issue is of special significance to the litigant, to the public, or the achievement of substantial justice, and the record is sufficiently complete to permit its adjudication, we may consider it."). And even if there were any questions as to whether the issue is properly before this Court (which it is), the need for clarity and consistency in the law, as well as the substantial impact on the parties and similarly situated litigants, should compel the Court to address it now.

33

Before Pareja, no case insulated landowners from a duty of reasonable care during snowfall absent "unusual circumstances." Not even Walmart would have known that such a standard purportedly governed its conduct because, at the time of the accident, that was not the law. Yet, in dismissing plaintiff's claims against Walmart, the majority introduces a new understanding of Pareja's first exception, one that was not -- and could not have been -- the governing law at the time of plaintiff's accident, as the "unusual circumstances" descriptor did not exist until several years later.

No reasonable argument can be made that, at the time of plaintiff's accident, a commercial landowner only had a duty of care to business invitees during snowfall if a court finds not only that the commercial landowner increased the risk of harm, but additionally that the court believes that those circumstances were "unusual." See ante at ___ (slip op. at 35). The phrase "unusual circumstances" did not exist in New Jersey tort law pre-Pareja, and the majority's new interpretation of the exception certainly did not exist before today.

The novelty of the majority's sole reliance on the "unusual circumstances" phrase to grant Walmart summary judgment is underscored by its emphasis on the lack of proffered testimony regarding "unusual circumstances." See ante at ___ (slip op. at 36). As the majority explains, "no

34

fact or expert witness testimony established 'unusual circumstances' that would justify the imposition of a duty as an exception to the ongoing storm rule." <u>Ante</u> at ___ (slip op. at 36). On that basis, the majority concludes no legal duty is reimposed and that the trial judge "should have granted Walmart's motion for summary judgment based on the record presented in that motion." <u>Ante</u> at ___ (slip op. at 36).

But of course plaintiff did not present evidence in a motion record as to so-called "unusual circumstances" to reimpose a duty during an ongoing storm -- no principle in tort law, no principle of general negligence, and no principle in our own case law required plaintiff to make such a showing of "unusual circumstances" when this accident occurred. Nonetheless, the majority reverses the jury verdict in plaintiff's favor and dismisses the complaint eleven years after the accident because she failed to provide fact or expert testimony relevant to a duty exception that had never been articulated in New Jersey law until <u>six years after</u> her accident, and consequently failed to satisfy the majority's novel interpretation of that exception, one which did not exist until <u>today</u>.

## 2.

Rather than grant Walmart summary judgment, I would uphold the jury verdict because the trial judge correctly charged the jury on the applicable,

35

governing law at the time of plaintiff's accident -- that of general negligence principles.

Without reference to <u>Pareja</u>'s framework pertaining to the reimposition of a legal duty of reasonable care during an ongoing storm,[11] the trial judge comprehensively instructed the jury on the applicable law, explaining, in part, the following:

> [I]f an ordinary person under similar circumstances and by the use of ordinary care would have foreseen the results that some injury or damage probably would have resulted and, either would not have acted, or if the person did act would have taken precaution to avoid the result, then the performance of the act or the failure to take such precaution would constitute negligence.

Because Walmart voluntarily acted, those longstanding principles control this matter -- not the majority's brand new "unusualness" requirement. The trial judge was correct, again, to reject Walmart's request to instruct the jury on the "unusual circumstances" language. In response to Walmart's

---

[11] In declining to charge the jury on <u>Pareja</u>, the trial judge correctly acknowledged that because <u>Pareja</u>'s framework concerns the imposition and reimposition of a duty of care, it concerns "an issue for summary judgment" and "deals not with what happens at trial before a jury"; in other words, it is "a question of law that must be decided by the court." <u>Jerkins ex rel. Jerkins v. Anderson</u>, 191 N.J. 285, 295 (2007).

request that the jury be charged on "unusual circumstances," the trial judge

further correctly explained that:

> This case is not Pareja. This case is dealing with the fact that Walmart, the [d]efendant in this case, . . . undertook an action. And whether or not . . . that action . . . caus[ed] . . . [the] resulting damages is a question of fact for the jury to decide under regular . . . negligence as in a pre-Pareja case. . . . [T]he question before the jury is, . . . in undertaking actions, [was Walmart] negligent in the actions they took or the inactions that they should've taken . . . relating to what they did?

The trial judge's reasoning reflects a proper understanding of the law at

the time -- again, this Court only adopted the ongoing storm rule and its

corresponding exceptions, "[f]or the first time," in Pareja. 246 N.J. at 548.

Any contention to the contrary misreads our pre-Pareja case law. The

majority cites Bodine v. Goerke Co., 102 N.J.L. 642 (E. & A. 1926), to imply

that the legal principles announced in Pareja are not new. See ante at ___ (slip

op. at 26-27). But Bodine never established that the duty of a commercial

landowner to keep a sidewalk reasonably free and clear of snow and ice

commences only after a reasonable time passes following precipitation. In

Bodine, the plaintiff alleged that the commercial landowner allowed "snow to

remain on the store entrance . . . for an unreasonable length of time [after]

having notice thereof" and that doing so would have rendered the area slippery

and dangerous." 102 N.J.L. at 643. The Court of Errors and Appeals

37

expressly identified the "only question" on appeal: "[W]hether negligence may be reasonably inferred from the testimony." Id. at 642. It concluded the trial judge erred by not entering a directed verdict of no cause of action in the commercial landowner's favor. Id. at 644.

Little can be gleaned from this two-page opinion written 100 years ago. At best, Bodine simply applied the old English common law "no liability" rule, which provided that "the parish at large is prima facie bound to repair all highways lying within it," and which was applied in our own early law as placing the responsibility for maintenance of sidewalks on the government. Stewart, 87 N.J. at 153-54 (citing The King v. Inhabitants of Sheffield, 2 T.R. 106, 111 (K.B. 1787)). But in Stewart, this Court expressly abolished that rule as "unjust," out of step with the "basic goals of tort law," and "not responsive to current urban conditions," holding instead that "commercial landowner[s] are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." 87 N.J. at 154-55, 157.

Insofar as Bodine retains any precedential value, the Court of Errors and Appeals did not hold that a commercial landowner has no duty to clear a business entrance of snow and ice until precipitation has ceased, and no reasonable reading of Bodine suggests otherwise. In fact, the Court of Errors

38

and Appeals never expressly discussed when a duty to remove snow and ice hazards arises. Neither did any subsequent judicial decision directly address such a duty before <u>Pareja</u>. And <u>Bodine</u> of course said nothing about "unusual circumstances."

Furthermore, in <u>Pareja</u>, the Court expressly acknowledged that "none of these cases [relied upon] directly address the ongoing storm rule." 246 N.J. at 554. The common rule in the pre-<u>Pareja</u> cases was that of reasonable care. <u>See</u> <u>Saco</u>, 1 N.J. at 382 (an owner who constructs a drain on a sidewalk has a "duty to exercise <u>reasonable care</u> to keep the structure safe for the use of the public" (emphasis added)); <u>Davis v. Pecorino</u>, 69 N.J. 1, 9 (1975) (a "landowner or occupier owes a duty of <u>reasonable care</u> to pedestrians lawfully traversing the public way" (emphasis added)); <u>Mirza v. Filmore Corp.</u>, 92 N.J. 390, 395 (1983) (a commercial landowner may be liable if "he has not acted in a <u>reasonably prudent manner</u> under the circumstances" (emphasis added)).

Accordingly, the trial judge correctly charged the jury with the applicable law, and thus, I would uphold the jury verdict.

B.

The majority further errs in applying <u>Pareja</u> because the ongoing storm rule applies to "<u>public walkways</u>," not Walmart's private parking lot. 246 N.J. at 548 (emphasis added). Despite <u>Pareja</u>'s plain and express holding that

39

"commercial landowners do not have the absolute duty . . . to keep sidewalks on their property free from snow or ice during an ongoing storm," 246 N.J. at 548, 558 (emphasis added), the majority now extends the ongoing storm rule to insulate Walmart from its duty of care to plaintiff in Walmart's private parking lot, voluntarily left open for business during the sleet, snow, and rain.[12]

But "historically and currently, the law has not been the same with respect to individuals who have been injured due to the conditions on the public sidewalk as opposed to private property." Cogliati v. Ecco High Frequency Corp., 92 N.J. 402, 415 n.6 (1983); see also Qian v. Toll Bros. Inc., 223 N.J. 124, 138 (2015) ("[U]nder our tort law, liability may depend on whether a plaintiff suffers an injury on the walk leading to the front door of a house -- which is owned or controlled by the property owner -- as opposed to a sidewalk abutting the property."). That is because "[t]he status of the injured as trespasser, licensee, social invitee or business invitee has been a determinant in defining the owner's duty on private property; such delineation is irrelevant with respect to the pedestrian on the public sidewalk." Cogliati, 92 N.J. at 415 n.6.

---

[12] Even if Pareja applies to commercial private parking lots, Walmart's conduct during the storm reimposed a duty of reasonable care.

40

Differentiating between public and private premises is necessary because the public has a "right to . . . safe and unimpeded passage" and travel on public walkways. Stewart, 87 N.J. at 151-52 (quoting Davis, 69 N.J. at 5). In contrast, private property is not open to all; access is limited and often conditional, depending on the relationship between the landowner and the entrant. As a result, the landowner's duty of care on private premises is tailored to the entrant's status and the circumstances of their entry; there is no blanket obligation to all comers as there is for public walkways. That body of law has existed for decades.

Indeed, the distinction between public walkways and private premises is especially important in Pareja's ongoing-storm context: Post-Pareja, commercial landowners do not owe a duty of care to plaintiffs traversing on "public walkways until a reasonable time after the cessation of precipitation"; that is, they are not required to maintain and treat premises -- such as "sidewalks" -- that they cannot close or otherwise restrict access to during a storm. 246 N.J. at 548 (emphasis added). But when commercial landowners voluntarily keep their private premises open and invite the public onto their property for business, they must owe invitees a duty of reasonable care, regardless of the weather conditions, as they have full control over public access to those private premises.

41

In line with that distinction, the Pareja Court only reached its "public walkway" and "sidewalk"-limited holding after "reviewing our case law on sidewalk liability." Id. at 548-50, 554-60 (emphasis added); see, e.g., Qian, 223 N.J. at 127 ( "Residential public-sidewalk immunity does not apply in the case of a sidewalk privately owned by a common-interest community."); Stewart, 87 N.J. at 157 ("[C]ommercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property . . . ."); Bodine, 102 N.J.L. at 643 (from a walkway, slip and fall inside a store vestibule in the entrance to a store); Saco, 1 N.J. at 378 (slip-and-fall upon an icy sidewalk); Davis, 69 N.J. at 3 (slip-and-fall on a public sidewalk); Mirza, 92 N.J. at 400 ("[M]aintenance of the public sidewalk abutting commercial properties under Stewart includes removal or reduction of the hazard of snow and ice dependent upon the standard of care of a reasonably prudent person under the circumstances."); Luchejko v. City of Hoboken, 207 N.J. 191, 195, 211 (2011) (distinguishing between "commercial and residential property owners for the purpose of imposing a duty to maintain sidewalks" and holding that a condominium complex is "residential and therefore is not subject to sidewalk liability"). And courts citing to Pareja, along with this broader body of case law, unsurprisingly understand it to reflect New Jersey's imposition of "a duty of care on commercial proprietors to make public walkways, like

42

sidewalks, safe for pedestrians." <u>See</u> <u>Snead v. Bally's Casino</u>, 700 F. Supp. 3d 203, 221 (D.N.J. 2023) (emphasis added) (citing <u>Pareja</u> and the above case law as controlling New Jersey public walkway liability, and describing <u>Pareja</u> specifically as "collecting cases imposing a duty of care on commercial proprietors to remove snow and ice <u>from sidewalks</u>" (emphasis added)).

Further illustrating that difference, and consistent with this dissent, is the revised model jury charge responding directly to <u>Pareja</u>. The updated charge, which this Court approved, applies only to sidewalks -- it does not address private parking lots because commercial private parking lots had nothing to do with <u>Pareja</u>. The charge properly states that "a commercial property owner does not have a duty to keep <u>sidewalks</u> on its property free from snow or ice during an ongoing storm." <u>Model Jury Charges (Civil)</u>, 5.20B, "Liability for Defects in Public Streets and Sidewalks" (rev. Jan. 2025) (emphasis added).

Here, plaintiff did not slip on a public sidewalk; her accident occurred in Walmart's private parking lot, voluntarily left open for business during an ongoing storm. It is axiomatic that private parking lots are not public walkways. Accordingly, in line with <u>Pareja</u>'s holding, the trial judge correctly instructed the jury that Walmart had a nondelegable duty to make its premises reasonably safe for business invitees. Despite the explicit language and unambiguous context of the above case law -- not to mention the material

43

distinction in tort liability between public and private premises -- the majority applies <u>Pareja</u> to Walmart's private parking lot.

IV.

Finally, the majority errs in granting Walmart summary judgment despite the litany of disputed issues of fact on this record (all of which a jury has already resolved in finding Walmart negligent after a full multi-day trial). Thus, if <u>Pareja</u>'s new framework had applied to plaintiff's case, and there had not yet been a trial, a jury would then have needed to resolve the factual question of whether Walmart's affirmative snow removal -- which increased the risk of harm to plaintiff -- constituted a breach of its duty of reasonable care to her.

Relevant disputed issues of fact that preclude summary judgment include, but are not limited to, whether: (1) Walmart failed to follow its own standard operating procedure to pretreat the parking lot surface before the storm started; (2) Walmart negligently delegated to Land Pros its responsibility to make its premises safe; (3) Walmart reasonably inspected or supervised Land Pros' work; (4) the slush and ice caused plaintiff's fall; (5) Walmart called Land Pros back to address the dangerous conditions; (6) Walmart allowed ice to form in a parking lot and failed, as Weist opined, to conduct a reasonable inspection, which would have corrected the dangerous

44

condition; (7) Walmart failed to train its own personnel in snow and ice management; (8) Walmart violated accepted standards and practices in training its personnel; (9) Walmart's management knew or should have known that the dangerous accumulation of snow and ice existed, particularly given that Walmart's assistant manager admitted that the parking lot "should have been better cleaned off"; (10) Walmart's actions/inactions fell below accepted standards by failing to have in place and follow proper procedures to make its premises safe for invitees; (11) Fierro, owner of Land Pros, had formal training in snow and ice management, and written policies for snow and ice management; (12) Fierro refused to inspect the property at reasonable intervals; (13) Fierro failed to pretreat the parking lot surface, even though Fierro was monitoring the weather; (14) Fierro, after spreading salt, failed to monitor or return to the lot despite snow, sleet, and rain falling; (15) application of salt, once accumulation occurred, "decreased the overall traction of the surface"; (16) "applying de[-]icer, as in this case, caused increased slickness if the surface/ground temperature is around or above [thirty-two degrees]"; (17) the "manner in which . . . Fierro addressed the conditions at Walmart required/caused/created the further need not only for him but for Walmart to . . . follow-up by clearing the resulting snow and slush"; (18) "throwing de-icer on . . . snow already on the ground" was "[a]bsolutely not"

acceptable by industry standards; (19) ground temperature is different from the "ambient," or air temperature, such that on the day of the accident, the ground would have been colder than the air; (20) with "[t]he ground temperature being at least freezing, [thirty-two] degrees," throwing de-icer on snow already on the ground "immediately becomes black ice"; (21) when Land Pros "put the salt down . . . , and when it hit[] that cold untreated surface it bec[ame] black ice"; and (22) Land Pros exacerbated the condition by throwing water on it. And so on.

Despite the jury's findings that Walmart's negligence caused the accident and plaintiff's serious injuries, under the majority's opinion, plaintiff will no longer be fairly and adequately compensated for her permanent injuries.

V.

In sum, the majority erroneously vacates plaintiff's verdict, setting aside her $1,328,658.59 judgment -- eleven years after the accident -- by summarily granting Walmart judgment as a matter of law. Such a disposition denies plaintiff the remedy to which she is entitled, immunizes a commercial occupier for unreasonable conduct that a jury found to be negligent, and rewrites the law in a manner that will sow confusion and inequity for years to come.

For the foregoing reasons, I dissent.

46